### NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

### M & M BAKERIES, INC., Respondent.

### No. 5500.

United States Court of Appeals
First Circuit.

Nov. 5, 1959.

George Schatzki, Attorney, with whom Jerome D. Fenton, General Counsel, Thomas J. McDermott, Associate General Counsel, and Marcel Mallet Prevost, Asst. General Counsel, Washington, D. C., were on brief, for petitioner.

Lawrence E. Spellman, Manchester, N. H., with whom Stanley M. Burns and Burns, Bryant & Hinchey, Dover, N. H., were on brief, for respondent.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

HARTIGAN, Circuit Judge.

This is a petition for enforcement of an order of the National Labor Relations Board issued in conjunction with the Board's decision which found that the respondent, M & M Bakeries, Inc. (hereinafter referred to as the Company), violated Section 8(a)(5) and (1), and Section 8(a)(3) and (1) of the National Labor Relations Act, as amended, 29 U.S.C.A. § 151 et seq.

The Board ordered the Company to cease and desist from refusing to bargain collectively, from discouraging union membership by discharging, refusing to reinstate and discriminating against union members, and from threatening to discharge employees for engaging in a strike or otherwise exercising their rights under Section 7 of the Act, and ordered the Company affirmatively to bargain collectively, and to offer immediate and full reinstatement to certain named employees without prejudice to seniority or other rights and privileges previously enjoyed.

■ The main contention of the Company is that there was no substantial evidence in the record considered as a whole to support the Board's findings. Therefore, this case must be examined to determine if the Board's findings are supported by substantial evidence on the record considered as a whole. Universal Camera Corp. v. National Labor Relations Board, 1951, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456. As to the finding that the Company first unduly delayed collective bargaining, and later refused to bargain, the record contains evidence, very largely documentary, that: business agent Cudahy of the Bakery and Confectionery Workers Local 41, affiliated with Bakery and Confectionery Workers International Union of America, AFL-CIO, (hereinafter called the Union), on August 29, 1957 sent to the president of the Company the Union's

draft of a proposed agreement and a letter asking for a meeting to negotiate. Receiving no reply, Mr. Cudahy wrote again on September 11 requesting negotiations with as little delay as possible. Counsel for the Company, Mr. Burns, replied on September 13 that the Company's general manager was away, but that on his return they would review the draft and then arrange a conference. On September 27 Burns wrote of the general manager's return and stated they would contact Cudahy for an appointment in the very near future. No such contact was made. Cudahy wrote on October 15, review the total lapse of time and asked Burns to name a day in the week ending October 26 when the Company would be prepared to commence negotiations. When Burns by letter of October 16 suggested a delay to await the outcome of another bargaining unit representation election in the Company's plant, Cudahy on the next day rejected the proposal for a delay and again requested a date for a meeting in the next week. There was no reply by the Company to this letter. On October 25 Cudahy wrote to the Company's counsel, reviewed the delays and advised that the Union might be forced to strike to compel the Company to commence negotiations. Burns replied on October 31 that the Company was preparing a draft of an agreement and hoped to send it by the end of the week. This draft was sent two weeks later. In reply to the draft transmittal, Cudahy on November 15 suggested the 20th or 21st of November as a date for commencement of negotiations. He received no reply. On November 21 Cudahy wrote Burns that the members of the Union employed by the Company had decided in a meeting held on November 20 to strike in an effort to force the Company to carry out its obligation to negotiate unless a contract satisfactory to them were negotiated by November 26. On November 22 Burns wrote to the Union that the Company regarded this as an ultimatum, and would not negotiate until the strike threat was withdrawn. The letter also stated that any employee who went out on strike would forfeit all rights of future employment with the Company. There were no efforts made by the Company to resume negotiations after November 22, 1957. Although there was testimony that some of the delays were caused by incapacity of Company officers responsible for negotiating, or other occupation of their time, such was never communicated to the Union; this circumstance may well lessen the probative value of the testimony seeking to show the Company's compliance with Section 8(a) (5) and (1).

In our opinion there was substantial evidence to support the Board's finding that the Company's dilatoriness in negotiations constituted a violation of Section 8(a)(5) and (1). National Labor Relations Board v. Armco Drainage & Metal Products, Inc., 6 Cir., 1955, 220 F.2d 573; National Labor Relations Board v. Blair Quarries, 4 Cir., 1945, 152 F.2d 25.

The refusal of the Company on November 22 to enter negotiations is evidenced by its letter and a newspaper story, but the Company has contended that the Union's threat of a strike "to cause the Company to carry out its obligation to negotiate" unless "a contract satisfactory to them has been negotiated by Tuesday, November 26, 1957" was an unreasonable demand amounting to refusal to bargain and relieved the Company of its duty to negotiate. But the correspondence and the circumstances of the transactions between the Company and the Union provide substantial evidence for the Board's finding that the strike action was a protest against the Company's refusal to meet with the Union. We believe that there is substantial evidence in the record to support the Board's finding that the Company violated Section 8(a)(5) and (1) by it refusal to bargain. National Labor Relations Board v. United States Cold Storage Corp., 5 Cir., 1953, 203 F.2d 924; National Labor Relations Board v. Pecheur Lozenge Co., 2 Cir., 1953, 209 F.2d 393.

■ In regard to the finding of violations of Section 8(a)(3) and (1) by the

discharge of the striking employees and refusal to reinstate them at the conclusion of the strike, the record contains evidence that, as stated above, the strike was in protest against the Company's refusal to enter negotiations, that telegrams were sent to each of the various strikers stating that if he did not report for work on schedule because of the strike, his services as an employee were immediately terminated, that when the strikers sought to return to work, they were told that they would be placed if the Company could do so, but with loss of seniority. Such evidence certainly constitutes "substantial evidence" for the Board's finding that the workers were discharged and that their reemployment did not constitute reinstatement. See National Labor Relations Board v. United States Cold Storage Corp., supra.

■ The Company does contend, however, that the strike was unprotected under Section 7 of the Act because of the Union's intent to inflict grave economic damage on the Company by its timing of the strike. Respondent relies on National Labor Relations Board v. Marshall Car Wheel & Foundry Co., 5 Cir., 1955, 218 F.2d 409. The Board found here, and there is substantial evidence of, advance notice of the strike to the Company which distinguishes the instant case from the Marshall case. Also the economic pressure which resulted from the Company's asserted vulnerability to the loss of double production just prior to a holiday is far different from the aggravated physical injury involved in the Marshall case. Therefore, the strikers' activities were protected, and the Company's actions violated Section 8(a)(3) and (1) of the Act.

■ The respondent has contended that the trial examiner demonstrated bias in his conduct of the hearing and thus denied it a fair hearing. Almost all of the specific instances referred to by respondents are rulings of the trial examiner on the evidence. Yet none of these rulings are attacked as erroneous in law. The other references of respondent are to the examiner's conclusions on the evidence. We have already determined that the record shows substantial evidence to support these findings and in view of this, we do not regard the fact that the findings are against respondent as proof of bias on the part of the examiner. Therefore, on the record as a whole we conclude that there is no merit in respondent's contention of bias in the proceeding against it. See National Labor Relations Board v. Summers Fertilizer Co., 1 Cir., 1958, 251 F.2d 514.

■■ The Board's order contains a prohibition against threatening to discharge employees for engaging in a strike, or otherwise interfering with the employees' rights guaranteed by Section 7. This was a result of the evidence that the Company sent a letter to Mr. Cudahy informing him that all who took part in the strike would be regarded by the Company as forfeiting their rights of employment with the Company, and the conclusion of the Board that this constituted a violation of Section 8(a)(1). Such a conclusion is supported by Collins Baking Co. v. National Labor Relations Board, 5 Cir., 1951, 193 F.2d 483 and National Labor Relations Board v. Electric City Dyeing Co., 3 Cir., 1950, 178 F.2d 980. Although the petitioner presented no argument directed precisely to this provision, it does seek enforcement of the order in full. We believe there was substantial evidence of the threat to discharge. Since this violation of the Act is so closely bound up with the violations by actual discharge and, therefore, the need for protection against such threats has been demonstrated, we do not regard the point as waived by the Board.

A decree will be entered enforcing the order of the Board.