494 A.2d 393

Lieut. Thomas CUMMINGS; Lieut. John Gallagher; Lieut. Ronald Stachowski; Lieut. William Boland; Lieut. Stephen McGovern; Lieut. John Ryan; Lieut. Kurt Kemmessies; Lieut. Michael Amico; Sgt. Neville Booth; Lieut. Michael Serfess; Lieut. Lawrence Clark; Lieut. John Riggin; Lieut. Harold Plude; Lieut. Robert Slimbock; Lieut. Harry Halbe; Lieut. John Griffin; Sgt. Vaughn Carver; Sgt. Charles Yager; Sgt. Gerald Adams; Sgt. Stephen Warner; Sgt. Carl Gustafson; Sgt. Richard Yost; Sgt. Robert Crowley; Sgt. Frank Rapinesi; Sgt. Robert Coulson, Appellants,

v.

NATIONAL RAILROAD PASSENGER CORPORATION, (AMTRAK), Appellee.

Superior Court of Pennsylvania.

Argued Sept. 6, 1984.

Filed April 19, 1985.

Reargument Denied June 28, 1985.

Alexander A. DiSanti, Media, for appellants.

Allen J. Gross, Philadelphia, for appellee.

Before CIRILLO, OLSZEWSKI and MONTGOMERY, JJ.

MONTGOMERY, Judge:

The instant appeal arises from an order by the lower court denying the Plaintiff-Appellants' petition for reconsid-

eration and affirming a previous order which sustained the Defendant-Appellee's exceptions and entered a judgment n.o.v. in its favor. The Appellants instituted this action asserting that the Appellee had breached their respective contracts of employment. After a non-jury trial resulted in a verdict for the Appellants, the lower court determined that it lacked subject-matter jurisdiction, and entered a judgment n.o.v. The Appellants contend that their action was properly before the court and seek an order for judgment on the original verdict.

The Appellee is the National Railroad Passenger Corporation, popularly known as AMTRAK. It recruited the Appellants as supervisors, lieutenants, and sergeants for its police force. The Appellants assert that when hired, they were offered permanent employment in their positions. AMTRAK maintains they were offered only temporary employment. The trial court found that the evidence supported the position of the Appellants on the issue of whether AMTRAK extended a promise of permanent jobs.

While that was the central issue to be resolved in proceedings in the lower court, the critical jurisdiction question presented on appeal requires an understanding of the pertinent factual and procedural background of the dispute. AMTRAK was a party to a collective bargaining agreement with the International Brotherhood of Teamsters [hereinafter IBT]. The agreement included a clause covering promotions to sergeants and lieutenants. Openings for such jobs were to be filled on the basis of seniority, by applicants from the IBT bargaining unit, who passed a promotional examination. Shortly after the Appellants began their employment, they were informed that their positions were subject to the promotional scheme of the aforementioned collective bargaining agreement. A sufficient number of patrolmen from the IBT bargaining unit, who were all hired before the Appellants, and who enjoyed higher seniority, passed the examination to fill all of the supervisory positions. The Appellants refused to take the examination, assertedly because they felt that they were

being treated unfairly. AMTRAK then determined that the Appellants were unable to retain their positions and notified them that they would be demoted.

The Appellants sought relief through various proceedings. They instituted an action in the United States District Court for the Eastern District of Pennsylvania to enjoin AMTRAK from giving the examination until the Appellants could challenge the IBT's status as bargaining representative. The National Mediation Board, the Federal administrative agency having jurisdiction over such disputes in the railroad industry, ordered an election. The AMTRAK police chose the Patrolmen's Benevolent Association [hereinafter PBA] as their representative, and the Federal District Court thereafter dissolved an injunction it had issued. Although the IBT was no longer the bargaining representative, the Appellants were nevertheless demoted.

The Appellants filed union contract grievances. AMTRAK denied their grievances and the PBA refused to appeal that denial any further in the contractual grievance procedure. After their grievances were denied, the Appellants filed Statements of Claim with the National Railroad Adjustment Board [hereinafter NRAB], another Federal administrative agency which handles railroad industry disputes. The Appellants' claims were denied; the NRAB ruled that AMTRAK acted properly in adhering to the promotional clause in the applicable collective bargaining agreement.

The Appellants, contemporaneously with the filing of union grievances, instituted the instant action against the Appellee in the Court of Common Pleas of Delaware County. On October 1, 1981, the trial court awarded the Appellants over $890,000.00 for lost wages and other damages. The Appellee filed exceptions on October 19, 1981, in which it challenged, for the first time, the lower court's subject matter jurisdiction.[1] As previously noted, the lower found merit in the Appellee's jurisdiction arguments.

---

1. Counsel for both parties had stipulated to an extension of the time for filing exceptions pursuant to Pa.R.C.P. 248. On September 20,

The lower court grounded its decision upon the conclusion that the claims of the Appellants were subject to the exclusive jurisdiction of the NRAB. The Appellants, while recognizing the broad authority of the NRAB in resolving disputes between employers and employees and their labor organizations in the railway industry, nevertheless claim that the purportedly independent employment contract claims they raise are properly subject to resolution in our state courts. After thorough consideration, we are convinced that the Appellee's jurisdiction argument was meritorious. Therefore, we conclude that the lower court acted properly in granting judgment n.o.v., and we affirm the order of the trial court.

The United States Congress enacted the Railway Labor Act (45 U.S.C. § 151, et seq.) in order to properly regulate and provide for the important national commerce concerns regarding the transportation industry. In recognition of peculiar concerns about labor relations stability in this area, the Congress mandated the arbitration of such labor disputes as might arise, and, by 1934 legislation, created the NRAB as the forum for such arbitration. See *Union Pacific Railway Co. v. Price*, 360 U.S. 601, 79 S.Ct. 1351, 3 L.Ed.2d 1460 (1959) for an excellent explanation of the historical background of this railway legislation. Specifically, the NRAB was to resolve disputes in the railway industry arising out of the interpretation or application of collective bargaining agreements. 45 U.S.C.A. § 153. Such disagreements, known as "minor disputes", relate

[E]ither to the meaning or proper application of a particular [collective bargaining agreement] provision with reference to a specific situation or to an omitted case. In the latter event the claim is founded upon some incident of the employment relation, or asserted one,

1982, the court sustained the exceptions and entered a judgment n.o.v. in favor of AMTRAK. The Appellants filed a notice of appeal with this Court on October 15, 1982, and then petitioned the lower court for reconsideration. On October 20, 1982, the trial court granted reconsideration. Thereafter, the appeal to this court was stricken. On December 10, 1982, the trial court dismissed the application for reconsideration. The instant appeal was filed on December 21, 1982.

independent of those covered by the collective bargaining agreement. . . .

*Elgin J. & E. Railway Co. v. Burley,* 325 U.S. 711, 723, 65 S.Ct. 1282, 1290, 89 L.Ed. 1886, 1894 (1945). It is clear that in establishing the NRAB, the Congress intended that such disputes would be resolved by an agency with special expertise in the railroad industry. *Hudie v. Aliquippa & S.R. Co.,* 249 F.Supp. 210 (W.D.Pa.1966).[2] It has also been held that the intent of the legislation was to leave minimum responsibility to the courts. *Taylor v. Hudson Rapid Tubes Corp.,* 362 F.2d 748 (3rd Cir.1966).

The Appellants strenuously argue that their claims do not constitute a "minor dispute". They maintain that their action is not related to a collective bargaining contract dispute, but is based upon an entirely separate breach of contract claim. They assert that the Appellee violated the terms of the individual contractual offers of employment it made, upon which each Appellant purportedly relied in accepting his respective job with the Appellee.

We cannot agree that the instant dispute is unrelated to the collective bargaining agreement which covers these employees, and further, cannot conclude that the claims raised by the Appellants in this action, while clothed in the rubric of a state common-law cause of action, are properly excluded from the broad genus of railway industry cases assigned by the Congress to exclusive resolution by the NRAB. Simply stated, to allow the Appellants to proceed in our state courts in this case would exalt form, in the nomenclature used in the Appellants' pleading, over substance, in terms of the realities of the case.

The Appellants have previously challenged the propriety of the actions of their employer, before the NRAB, and sought to be reinstated to the positions in which they were originally hired, but which eventually were vacated and then awarded to other employees who had more seniority than the Appellants. Such action was taken by the Appellee because of the provisions of the applicable labor agree-

2. Affirmed, 360 F.2d 213 (3rd Cir.1966).

ment covering the jobs. In the NRAB case, the Appellants based their claims upon the same individual contract rights which they rely upon for support in claiming damages in the instant action. The NRAB held that such individual rights conflicted with the collective bargaining contract rights of the union membership at large, and declared that the provisions of the collective bargaining agreement must prevail over any individual employment agreements. The Appellants' requests for relief were denied.

All of the Appellants' claims in this case are inextricably entwined with their rights under their collective bargaining agreement. In essence, they disagree with the manner in which that contract was applied to them, in view of the individual circumstances of their respective hirings. Because their rights under the collective bargaining agreement vis-a-vis their alleged individual employment agreements has already been ruled upon by the NRAB, our state courts have no jurisdiction to pass upon the same contentions. It is clearly not the right of the courts in our Commonwealth to review the fairness or propriety of NRAB decisions, nor to address "minor disputes", a function which Federal legislation places within the exclusive jurisdiction of the NRAB.

Our conclusions in this case are guided by clear precedent from the United States Supreme Court and other Federal courts in analogous cases. In *Union Pacific Railroad Company v. Price, supra,* the Court was presented with a situation in which a discharged employee, who had unsuccessfully contested his dismissal before the NRAB, thereafter sought damages from his employer in a commonlaw wrongful discharge case instituted in the District Court.[3] Writing for the Majority, Justice Brennan thoroughly explained the legislative history leading to the 1934 birth of the NRAB, and then stated:

Plainly the statutory scheme as revised by the 1934 amendments was designed for effective and final decision

3. The Federal District Court had jurisdiction of this common-law action because of the diversity of citizenship of the parties.

of grievances which arise daily, principally as matters of the administration and application of the provisions of collective bargaining agreements. This grist of labor relations is such that the statutory scheme cannot realistically be squared with the contention that Congress did not purpose to foreclose litigation in the courts over grievances submitted to and disposed of by the Board ... To say that the discharged employee may litigate the validity of his discharge in a common-law action for damages after failing to sustain his grievance before the Board is to say that Congress planned that the Board should function only to render advisory opinions, and intended the Act's entire scheme for the settlement of grievances to be regarded "as wholly conciliatory in character, involving no element of legal effectiveness, with the consequence that the parties are entirely free to accept or ignore the Board's decision * * * [a contention] inconsistent with the Act's terms, purposes and legislative history." *Elgin J. & E.R. Co. v. Burley*, 325 U.S. 711, 720–721, 65 S.Ct. 1282, 1288 [89 L.Ed. 1886, 1892]. 360 U.S. at 616–17, 79 S.Ct. at 1359–60, 3 L.Ed.2d at 1469–70.

Thus, the Majority made it clear that an employee who contests his employer's conduct in NRAB proceedings should not be given access to the courts to relitigate the same dispute in a commonlaw action for damages.

The Dissenting Justices in the *Union Pacific Railroad Company* case raised the same rationale that the Appellants assert before us in the instant appeal—that the claims in issue were for money damages in a separate cause of action, and not for the type of collective bargaining relief, including backpay, as might be available from the NRAB. In expressing that view, the Dissenters relied in part upon the holding in *Moore v. Illinois Central Railroad Co.*, 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089 (1941). *Moore* was a case in which it was held that a railroad employee who was discharged could elect to challenge his employer's alleged breach of the employment contract in a state court contract

action, rather than take it before the NRAB. Basically, the conclusion of the Court in *Moore* was that the procedures for the resolution of "minor disputes" under the Railway Labor Act were optional, rather than compulsory.

The holding of *Moore* was reexamined in *Andrews v. Louisville & Nashville Railroad Co.*, 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972), and was expressly overruled. The *Andrews* case provides illustrative guidance in the instant case. In *Andrews,* as in *Moore,* the railway employee instituted a court action seeking damages for wrongful discharge.[4] He had not previously resorted to procedures before the NRAB. In overruling *Moore,* and directing the employee to avail himself of the NRAB procedure for the resolution of his claims, the Majority in *Andrews* discussed the policy of requiring the exhaustion of administrative remedies. In doing so, the Majority declared:

The term "exhaustion of administrative remedies" in its broader sense may be an entirely appropriate description of the obligation of both the employee and carrier under the Railway Labor Act to resort to dispute settlement procedures provided by that Act. It is clear, however, that in at least some situations the Act makes the federal administrative remedy *exclusive,* rather than merely requiring exhaustion of remedies in one forum before resorting to another. *A party who has litigated an issue before the Adjustment Board on the merits may not relitigate that issue in an independent judicial proceeding.* * * * He is limited to the judicial review of the Board's proceedings that the Act itself provides. * * * In such a case the proceedings afforded by 45 U.S.C. § 153 First (i), will be the *only remedy available to the aggrieved party.* 406 U.S. at 325, 92 S.Ct. at 1565, 32 L.Ed.2d at 100. (citations omitted; emphasis supplied)

Thus, the Majority of the Court in *Andrews* made it clear that after a railway employee dispute has been presented to

---

**4.** Although in Andrews, the suit was initiated in the Georgia state courts, it was removed to the United States District Court at its inception.

the NRAB for resolution, an employee who has been a party to such proceedings may not attempt to relitigate the dispute in court.

The precedental value of the Majority holding in *Andrews* to the resolution of the issues in dispute in the instant appeal is made more evident by a referral to Justice Douglas' Dissenting Opinion in *Andrews*. Justice Douglas went to great pains to explain that the employee in the case was not seeking a collective bargaining remedy, but rather sought damages because of his employer's alleged wrongful conduct under Georgia contract law. Clearly, the Supreme Court Majority found that argument to lack merit. One cannot fail to draw an analogy between the arguments proferred by the Appellants in the instant case and the unsuccessful position taken by the employee in *Andrews*. Unfortunately for the Appellants, the Majority of the Supreme Court, to which we must adhere, found that railway employees are bound by statute to initially direct such disputes to the NRAB, and cannot thereafter relitigate such disputes under state common-law theories.

Other Federal Court decisions in comparable situations also provide guidance to us suggesting the correctness of the decision reached by the Delaware County Court in this case. In *Magnuson v. Burlington Northern, Inc.*, 576 F.2d 1367 (9th Cir.1978), cert. denied, 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978), a discharged employee instituted an action in state court, later removed to Federal Court, asserting that he was entitled to damages for the intentional infliction of emotional distress from his employer, arising from the circumstances of his discharge. The Court determined that the plaintiff employee's claims were either arguably covered by or even had a " 'not obviously insubstantial' relationship to the labor contract." *Magnuson, Id.* at 1369. Thus, the Court held that the claims had to be classified as a "minor dispute", subject to the administrative process allowing resolution by the NRAB.

A similar conclusion was reached by the United States District Court for South Carolina in *Carson v. Southern*

*Railway Company,* 494 F.Supp. 1104 (D.C.S.C.1979), a case in which the employee brought a defamation action against his railway employer as a result of alleged statements by a supervisor that the employee was intoxicated on duty. In reliance upon the Supreme Court's *Andrews* decision, the District Court held that even though the action was instituted on state common-law grounds seeking damages, it had to be categorized as a "minor dispute" because it evolved out of an employment disagreement in which the terms of the applicable collective bargaining agreement, relating to employee intoxication, had to be considered.

A factual situation highly analogous to that presented in this appeal was evident in *McKinney v. International Association of Machinists,* 624 F.2d 745 (6th Cir.1980). In that case a group of railroad employees sued their employer and their union. They asserted that they had entered a training program after being assured by their employer that this was the only route whereby they could obtain seniority and journeyman mechanic status. They were also advised by the employer that it would not directly hire journeymen off of the street, except in an emergency situation. Notwithstanding such alleged promises, the employer hired several others as journeyman mechanics, in non-emergency circumstances. Several of these newly-hired individuals, pursuant to a subsequent agreement between the employer and the union, were established as journeymen mechanics. The plaintiffs thereupon filed a breach of contract claim against the employer, asserting that the newly-hired employees were wrongfully promoted ahead of the plaintiffs, and in violation of the plaintiffs' agreements with the employer. The plaintiffs asserted that the employer's conduct cost them the loss of salary and job seniority. With respect to the union, their suit claimed a breach of the duty of fair representation.

The District Court [5] in *McKinney* held that the plaintiffs' claims against the employer must be held to constitute a

5. This is another case which was initiated in state court but then removed to the Federal courts.

"minor dispute" under the Railway Labor Act, thereby vesting the NRAB with primary and exclusive jurisdiction over the controversy. The Court of Appeals affirmed on the same rationale. In doing so, it pointed out that the seniority issue in dispute was dealt with in the collective bargaining agreement between the employer and the union. Thus, since the resolution of the problem would involve the terms of the collective bargaining agreement or interpretations thereof, the Court of Appeals ruled that it must be considered a "minor dispute", subject to the primary and exclusive jurisdiction of the NRAB.

All of these precedents require the same conclusion here. Employees of a railway are placed in a special legal position with regard to disputes with a railway employer. The legislation described above, and applicable court decisions, make it clear that such employees must submit any dispute which may include the analysis of collective bargaining agreements and the rights of employees covered by them, to the administrative processes of the NRAB. It is impossible to evaluate the Appellants' contract claims in this case without reference to their rights under the applicable collective bargaining agreement. Moreover, it cannot be ignored that the NRAB has already passed upon the Appellants' contentions that their contract rights were violated by the Appellee's conduct. They cannot relitigate such arguments in a different form of action in our courts. Therefore, it is evident that the Delaware County Court of Common Pleas acted properly in vacating its earlier verdict for the Appellants, and in rendering judgment n.o.v. to the Appellee, on jurisdictional grounds.

The order of the lower court is hereby affirmed.