523 A.2d 338

Lieut. Thomas CUMMINGS, Lieut. John Gallagher, Lieut. Ronald Stachowski, Lieut. William Boland, Lieut. Stephen McGovern, Lieut. John Ryan, Lieut. Kurt Kemmessies, Lieut. Michael Amico, Sgt. Neville Booth, Lieut. Michael Serfess, Lieut. Lawrence Clark, Lieut. John Riggin, Lieut. Harold Plude, Lieut. Robert Slimbock, Lieut. Harry Halbe, Lieut. John Griffin, Sgt. Vaughn Carver, Sgt. Charles Yager, Sgt. Gerald Adams, Sgt. Stephen Warner, Sgt. Carl Gustafson, Sgt. Richard Yost, Sgt. Robert Crowley, Sgt. Frank Rapinesi, and Sgt. Robert Coulson, Appellants,

v.

NATIONAL RAILROAD PASSENGER CORPORATION (AMTRAK), Appellee.

Supreme Court of Pennsylvania.

Argued Dec. 1, 1986.

Decided March 30, 1987.

interest on a tax refund. Both parties herein agree that this law has no bearing on the instant matter. *See* 72 P.S. § 806.1.

Alexander A. DiSanti, John M. Gallagher, Jr., Media, for appellants.

Allen J. Gross, Michael J. Ossip, Philadelphia, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

HUTCHINSON, Justice:

Appellants appeal by allowance a Superior Court order which affirmed a judgment n.o.v. entered by Delaware County Common Pleas. Appellants sued claiming that appellee, AMTRAK, promised them full time supervisory positions in its police force and breached that promise by later demoting them. In reliance, they quit other jobs as security or police officers. The court returned a verdict in appellants' favor. However, Common Pleas subsequently held that it lacked subject matter jurisdiction because appellants'

claims are governed by the Railway Labor Act (RLA), 45 U.S.C. §§ 151–88. Thus, they are subject to the exclusive jurisdiction of the National Railroad Adjustment Board (Board). Accordingly, it granted AMTRAK's motion for judgment n.o.v., 343 Pa.Super. 137, 494 A.2d 393.

We hold that appellants' individual claims are separate and distinct from those governed by the RLA and, therefore, are not within the Board's jurisdiction over claims arising under railway labor agreements. Appellants' claims for breach of individual employment contracts and misrepresentation are cognizable under our state law. The judgment n.o.v. Common Pleas entered was improper and must be reversed.

AMTRAK was created by an act of Congress in 1970. In 1976, it exercised a statutory option [1] and purchased properties from the trustees of the bankrupt Penn Central Railroad. It took responsibility for operating and maintaining these properties; security was one of these responsibilities. AMTRAK had to establish an operating railroad police force in short order. To do so it recruited experienced police and security professionals from government and industry to fill supervisory positions as lieutenants and sergeants.[2] Appellants, twenty-five individuals experienced in the security and law enforcement fields, were recruited for this purpose. They had been employed in responsible positions in government and industry. In many, if not all, cases, they had substantial seniority in their prior jobs and good chances of advancement. They claim AMTRAK told them that the positions were permanent and advancement was possible. They testified that they quit their jobs and accepted positions with AMTRAK in reliance upon these representations.

AMTRAK also needed patrolmen to staff its police force. To this end, it negotiated an agreement with ConRail and the International Brotherhood of Teamsters (Teamsters),

---

1. The option was contained in the Regional Rail Reorganization Act, *as amended,* 45 U.S.C. §§ 701–797m (Supp.1986), which created ConRail out of several bankrupt northeastern railroads.

2. Appellants were hired at the ranks indicated in the caption.

the union which had represented ConRail's patrolmen. Under it, the patrolmen were transferred from ConRail to AMTRAK, subject to the pre-existing collective bargaining agreement between ConRail and the Teamsters. Those patrolmen who "conveyed over" also brought their accumulated ConRail seniority with them.[3] The collective bargaining agreement contained a procedure for promotion of patrolmen to sergeant and lieutenant. Under it these officers are drawn from the patrolmen ranks. A test is administered; individuals who pass the test are promoted in order of seniority. Appellants claim that either they were left ignorant of this agreement or were told that special arrangements had been made with the Teamsters which allowed AMTRAK to hire them permanently as officers.

A few months after they were hired, appellants were told that their future employment position would be determined under the collective bargaining agreement's promotion procedure. Learning that any patrolman who passed the test would have greater seniority than they would and would be eligible for promotion before them, they refused to take the test.

Appellants then challenged the Teamsters status as collective bargaining representative for the AMTRAK police. They also brought suit in United States District Court for the Eastern District of Pennsylvania to prevent AMTRAK from administering the promotion test. An injunction was granted in December, 1976. *Slimbock v. National Rail Passenger Corp.*, No. 76–3840 (E.D.Pa. December 15, 1976). It enjoined AMTRAK from administering the test pending the outcome of the representation dispute. Ultimately the Teamsters were decertified as the collective bargaining representative and a representation election was held. In it, the Patrolman's Benevolent Association, Long Island Railroad (PBA) defeated the Teamsters and the AMTRAK Police Association, appellants' choice. The PBA was certified as the collective bargaining representative for the

3. This was guaranteed by section 504(f) of the Regional Rail Reorganization Act, *as amended,* 45 U.S.C. § 774(f)(1)(D) (repealed 1981).

AMTRAK police and the injunction dissolved. *Id.* (April 27, 1978).

Thereafter the promotion test was given; appellants still refusing to take it. They were then notified that they would be demoted on May 18, 1978. They again filed suit in federal district court seeking to enjoin AMTRAK from demoting them. That court dismissed the complaint on the ground that it lacked subject matter jurisdiction because that dispute was within the exclusive jurisdiction of the National Railroad Adjustment Board. *Slimbock v. National Rail Passenger Corp.*, No. 78–1662 (E.D.Pa. May 18, 1978). Consistent with AMTRAK's plans, appellants were demoted. They then filed grievances under the collective bargaining agreement challenging the demotions. The grievances were denied at the first level, and PBA refused to carry them further.

Appellants took the matter to the next grievance level on their own. They filed statements of claim with the Board, an administrative tribunal established by the RLA. 45 U.S.C. § 153. The United States Supreme Court has held that the Board has sole jurisdiction to finally decide "minor disputes." [4] *Andrews v. Louisville & N. R.R.*, 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972). The Board denied appellants' claims. It held that AMTRAK properly applied the provisions of the collective bargaining agreement on promotions to appellants and properly demoted them under those provisions.

However, appellants had also filed suit in Delaware County Common Pleas. There they claimed that in detrimental reliance on AMTRAK's promise of permanent supervisory employment they had left responsible positions in government and industry, and that AMTRAK breached that promise when it demoted them to lower paying, less prestigious

---

4. "Minor disputes" concern the application or interpretation of an existing collective bargaining agreement. "Major disputes," on the other hand, arise in the making of a collective bargaining agreement. *Elgin, Joliet & Eastman Ry. v. Burley*, 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945). The matter before the Board was a "minor dispute."

positions.[5]  Accordingly, they sought damages for loss of wages, benefits and prestige.  In a bench trial, the court returned a verdict in appellants' favor totaling $890,000. AMTRAK moved for a judgment n.o.v. on the ground that Common Pleas lacked subject matter jurisdiction.[6]  Common Pleas agreed and granted judgment n.o.v.  It held that appellants were simply protesting the way the promotion provisions of the collective bargaining agreement were applied to them, an aspect of a "minor dispute" under the RLA within the sole jurisdiction of the Board.  Thus, both state and federal courts are precluded from hearing these claims already considered and denied by the Board.

Superior Court affirmed, basically adopting Common Pleas rationale.[7]

The RLA is a federal statute.  When interpreting a federal law, of course, we are bound by the holdings of the United States Supreme Court on the issue before us.  Additionally, we may look to that Court for guidance when it has not addressed the precise federal issue before us but has spoken in a related federal context.  The United States Supreme Court has considered an issue seemingly analogous to the one before us.  In a recent decision, *Belknap, Inc. v. Hale*, 463 U.S. 491, 103 S.Ct. 3172, 77 L.Ed.2d 798

5.  We note in passing that appellants' claims are not quasi-contract claims under the principles set forth in the Restatement of Restitution §§ 1, 3 (1937).  *See also* Restatement of Restitution § 90 (discussing reliance in a tort context).  They are based on actual contracts.  Their promises to leave their jobs and work for AMTRAK provide adequate consideration.

6.  Appellants allege that AMTRAK waived this argument by failing to raise it before the verdict was returned.  Challenges to jurisdiction over the subject matter are not subject to waiver.  *Vale Chemical Co. v. Hartford Accident and Indemnity Co.*, 512 Pa. 290, 516 A.2d 684 (1986); *In re Patterson's Estate*, 341 Pa. 177, 19 A.2d 165 (1941); Pa.R.C.P. 1032.  Therefore, we must address AMTRAK's argument.

7.  If the issues before the Board under the collective bargaining agreement and before our state courts under AMTRAK's promises to appellants involve the same contract, appellants would also face the problem of issue preclusion.  For the reasons set forth *infra*, we believe that AMTRAK's agreements with appellants are individual contracts separate and distinct from the collective bargaining agreement.  Therefore, the issue of whether federal preemption deprives state courts of subject matter jurisdiction must be faced directly.

(1983), it held that individual state contract claims are not necessarily preempted by the National Labor Relation Act (NLRA), 29 U.S.C. §§ 151–68.

Though *Belknap* arose under the NLRA instead of the RLA, we believe its holding is properly analogous to the case before us. Indeed, the United States Supreme Court has held that courts should look to cases decided under the NLRA when confronted with similar issues arising under the RLA. *Brotherhood of Railroad Trainmen v. Jacksonville Terminal Co.,* 394 U.S. 369, 89 S.Ct. 1109, 22 L.Ed.2d 344 (1969).

Both the NLRA and the RLA are part of an existing body of federal statutory labor law.[8] The basic policy and purpose of both is the same: to foster industrial peace and prevent strikes and disruptions in the flow of interstate commerce by guaranteeing workers' right to organize and promoting collective bargaining. 45 U.S.C. § 151a; 29 U.S.C. § 151. *See, e.g., Virginian Ry. v. System Federation No. 40,* 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789 (1937) (dealing with RLA); *N.L.R.B. v. American National Insurance Co.,* 343 U.S. 395, 72 S.Ct. 824, 96 L.Ed. 1027 (1952) (dealing with the NLRA). *Generally, see also* Comment, *The National Labor Relations Act at Fifty: Roots Revisited, Heart Rediscovered,* 23 Duq.L.Rev. 1059 (1985). The two acts, however, do differ in implementation and mechanics. The NLRA envisions a contest of economic strength between the union and company after bargaining reaches impasse. Strikes and lockouts are weapons in this clash. *N.L.R.B. v. Allis-Chalmers Mfg. Co.,* 388 U.S. 175, 87 S.Ct. 2001, 18 L.Ed.2d 1123 (1967). In Congress's judgment,

---

**8.** Federal railroad legislation dates back to the 1890's. Following the disastrous Pullman Strike, a presidential commission studied the strike and made recommendations to prevent future railroad strikes. The commission proposed the enactment of federal legislation guaranteeing the right of railroad workers to freely organize and bargain collectively and establishing means to mediate labor disputes. The Erdman Act, passed in 1898, followed. Additional laws were passed in ensuing years, including the present statute, the RLA, in 1926. The NLRA, which covers workers in most other industries, was not enacted by Congress until 1935. I *The Developing Labor Law* 13–21 (C. Morris 2d ed. 1983).

however, rail transportation is too vital to interstate commerce to permit quick resort to economic war. *Virginian Ry., supra* 300 U.S. at 552–56, 57 S.Ct. at 601–03. Under the RLA, the parties must first comply with a number of statutory provisions designed to foster voluntary settlement of "major disputes" before a strike may occur. *Brotherhood of Railroad Trainmen, supra; Virginian Ry., supra. See* 45 U.S.C. §§ 154–60. The Board has the power to finally decide all "minor disputes." 45 U.S.C. § 153; *Elgin, Joliet & Eastman Ry., supra.* Thus, the parties cannot resort to strike or other self help. These are differences in degree, manner of implementation and mechanics; they are not material to the matter before us. The basic purposes and policy of the two statutes are the same.

In *Belknap*, negotiations between an employer and a union reached impasse; the union called a strike. The Company hired replacements and promised them permanent positions. The replacements and union workers who stayed on the job were given a raise. Subsequently, the Union filed an unfair labor practice charge with the National Labor Relations Board (N.L.R.B.) alleging that the unilateral wage increase violated §§ 8(a)(1), (3) and (5) of the NLRA. The Company assured the replacements that their positions were secure. Eventually, the Union and Company settled the strike. As part of the settlement, the Union agreed to drop the unfair labor practice charge in return for reinstatement of all strikers. The Company, in turn, laid-off all of the replacements. The replacements sued the Company in Kentucky state court alleging misrepresentation and breach of contract. The trial court granted the Company's motion for summary judgment on the ground that Congress had preempted the field by enacting the NLRA. The Kentucky Court of Appeals reversed. It held that the claim was not preempted because it was only peripheral to the NLRA and was deeply rooted in local law. The United States Supreme Court granted certiorari.[9]

9. The Kentucky Supreme Court agreed to hear the case but later dismissed it as improvidently granted.

Under the doctrine set forth in *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), state law covering conduct arguably covered by the NLRA is presumably preempted. *Id.* at 243–44, 79 S.Ct. at 778–79. However, if the state law is concerned with matters peripheral to federal law or deeply rooted in state law, there is no federal preemption. *Id.* In *Belknap*, the Company argued that the replacements' state law claims were subject to the presumption, neither exception applied, and so were preempted.

The United States Supreme Court examined this preemption argument under *San Diego Building Trades, supra.*[10] The Court rejected this argument. Instead, it found both the exception for matters peripheral to federal law and the exception for matters deeply rooted in state law applicable. The Court stated that federal law is concerned with the rights of strikers and found that the state claims directly and primarily concern the replacements' rights. Accordingly, it held the replacements' rights peripheral to federal law. The Court also found a strong state interest in protecting citizens from misrepresentation and breaches of contract which brought the case within the other preemption exception. Relying on other cases in which it had allowed state claims in labor-related contexts, the United States Supreme

---

**10.** The Supreme Court in *Belknap* also addressed another federal labor law preemption doctrine; that doctrine was set forth in *Lodge 76, International Association of Machinists v. Wisconsin Employment Relations Commission*, 427 U.S. 132, 96 S.Ct. 2548, 49 L.Ed.2d 396 (1976). Under it, state law dealing with a party's conduct during a labor dispute is preempted where Congress intentionally left that area unregulated. The Court held Congress intended labor disputes arising under the NLRA to be controlled by "the free play of economic forces," *id.* at 140, 96 S.Ct. at 2553, and left them unregulated. The Company in *Belknap* argued that the replacements' claims were preempted under this doctrine as well. The Court considered and rejected the Company's arguments for preemption based on Congress's intent to leave the conduct of strikes unregulated. We need not discuss this aspect of preemption further. It is not applicable or relevant to the case before us. In addition, the NLRA and RLA are materially different in this context. Congress did not intend railroad labor disputes to be resolved solely by the "free play of economic forces," but has provided statutory mechanisms for dispute resolution without a work stoppage. *See* p. 235–237.

Court held that the replacements' state law claims for breach of contract and misrepresentation were not preempted under this doctrine. *Linn v. United Plant Guard Workers*, 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966) (state law action for injuring reputation is not preempted by the NLRA even if the comments constitute an unfair labor practice); *Farmer v. United Brotherhood of Carpenters*, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977) (state law action for intentional infliction of emotional distress not preempted by the NLRA even if the conduct also constitutes an unfair labor practice); *Sears Roebuck, Inc. v. Council of Carpenters*, 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978) (state trespass action for picketing not preempted by the NLRA).

The instant case is analogous to *Belknap*. In each, workers were offered and accepted permanent positions. Pursuant to a valid collective bargaining agreement, they were subsequently removed from those jobs. The removals were proper under the collective bargaining agreement. The workers, who relied on the employer's promise, sued in state court and claimed that their rights under state law were violated. The claims were for breach of contract and misrepresentation. In *Belknap*, the N.L.R.B. under the NLRA was interested in protecting striking workers from unfair labor practices; it was not concerned with the replacements' rights. Similarly here, the interest of the Board under the RLA here is the protection of the workers' rights under the collective bargaining agreement. It has no interest in appellants' state law rights because they arose separately from the collective bargaining agreement. Pennsylvania has an interest as strong as Kentucky or any other state in protecting its citizens from breaches of contract and misrepresentations. Thus, both exceptions to the presumption of federal preemption for unregulated conduct (peripheral to federal law and deeply rooted in state law, *San Diego Building Trades, supra*) are applicable here.

Given the factual similarity and the virtually identical purpose of the two federal acts, *see* p. 235–237, we see no

reason to reach a different result here than the United States Supreme Court did in *Belknap, supra.* Therefore, we hold that appellants' state law claims were not preempted by the RLA. Common Pleas did not lack subject matter jurisdiction and improperly granted appellee AMTRAK's motion for judgment n.o.v.

Aside from *Belknap,* the established test for federal preemption is whether both state and federal laws can operate "without impairing the federal superintendence of the field...." *Florida Lime Growers v. Paul,* 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963).[11] The federal interests here are the prevention of strikes and maintenance of the flow of interstate commerce by promoting meaningful collective bargaining and protecting employees' rights under collective bargaining agreements. Appellants' claims, however, do no damage to the integrity of the collective bargaining agreement nor are they likely to cause additional labor strife. They have accepted the judgment of the Board that they were properly demoted under the terms of the collective bargaining agreement. They seek only monetary damages, not return of their jobs, and have not threatened any concerted action which would disrupt railroad service or disturb the job security of the railroad workers the Teamsters had under the contract with Conrail and the PBA now has with AMTRAK. Their claim is based on individual contracts in which AMTRAK promised them jobs; relying on this promise, they quit other jobs. These contracts are separate from the collective bargaining agreement and do not affect it.[12] In spite of AMTRAK's breach

11. This is essentially identical to the doctrine set forth in *San Diego Building Trades, supra.*

12. The United States Supreme Court has held that individual employment contracts dealing with matters covered in collective bargaining agreements are invalid under the RLA apparently because they interfere with the collective relationship between the workers and their bargaining representative. *Order of Railroad Telegraphers v. Railway Express Agency, Inc.,* 321 U.S. 342, 346–47, 64 S.Ct. 582, 585, 88 L.Ed. 788 (1944). Collective bargaining agreements govern the employment relationship and deal with such matters as compensation, rules and working conditions for employees. *Id.* They do not deal with recruitment except to the extent that certain trade union agreements use

of appellants' individual contracts, the collective bargaining agreement still defines the employment relationship. In fact, we see no way that this claim would "impair federal superintendence."

Neither we nor the United States Supreme Court have held that the RLA has wholly preempted the railway labor field. *Terminal Railroad Association of St. Louis v. Brotherhood of Trainmen,* 318 U.S. 1, 63 S.Ct. 420, 87 L.Ed. 571 (1943) (states may regulate matters dealing with the health, safety and welfare of workers); *Baltimore & O. R.R. v. Commonwealth, Department of Labor and Industry,* 461 Pa. 68, 334 A.2d 636, *appeal dismissed,* 423 U.S. 806, 96 S.Ct. 14, 46 L.Ed.2d 26 (1975) (state may specify pay periods for railroad workers).

This is not a situation like *California v. Taylor,* 353 U.S. 553, 77 S.Ct. 1037, 1 L.Ed.2d 1034 (1957), in which a state law denied workers on a state owned railroad the right to bargain collectively. The state law there clearly interfered with the RLA, and the United States Supreme Court struck it down. Nor is this case like *Union Pacific R.R. v. Price,* 360 U.S. 601, 79 S.Ct. 1351, 3 L.Ed.2d 1460 (1959). In that case a railroad worker brought a common law diversity action alleging wrongful discharge based on the terms of the collective bargaining agreement. His claim under the agreement had been adjudicated and denied by the Board. He tried to relitigate his dismissal, still relying on the collective bargaining agreement in United States District Court. The United States Supreme Court held that he was bound by the Board's decision and could not relitigate it. Unlike *Price,* appellants' claim is not based on the collective bargaining agreement but on their prior contract with AM-

hiring halls. *See Local 357, International Brotherhood of Teamsters v. N.L.R.B.,* 365 U.S. 667, 81 S.Ct. 835, 6 L.Ed.2d 11 (1961). The individual contracts at issue here dealt with AMTRAK's promise to hire appellants and are thus outside of the collective bargaining agreements' scope. Accordingly, these contracts are not forbidden under *Order of Railroad Telegraphers, supra. See also J.I. Case v. N.L.R.B.,* 321 U.S. 332, 64 S.Ct. 576, 88 L.Ed. 762 (1944) (cited in *Order of Railroad Telegraphers* for general discussion of the relation of individual contracts and collective bargaining agreements).

TRAK. The Board did not and could not address that matter.

For the foregoing reasons, the order of Superior Court affirming Delaware County Common Pleas is reversed and the initial judgment rendered in favor of appellants is reinstated.