**Roberta LAMB, Plaintiff,**

v.

**UNITED STATES of America,
Defendant.**

Civ. No. 91–5065.

United States District Court,
W.D. Arkansas,
Fayetteville Division.

Nov. 2, 1991.

Stephen E. Adams, Fayetteville, Ark., for plaintiff.

Matthew Fleming, Asst. U.S. Atty., Fort Smith, Ark., Karen R. Osborne, Washington, D.C., for defendant.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

This case is before the court on a motion for summary judgment filed by the plaintiff, Roberta Lamb. Lamb filed a complaint against the United States of America on May 16, 1991, alleging that the government had improperly assessed a penalty of $26,000.00 against her for purported violations of Section 6701 of the Internal Revenue Code, 26 U.S.C. § 6701. In her motion for summary judgment Lamb asserts that the government's imposition of penalties is improper because the assessment is barred by the five year statute of limitations imposed by 28 U.S.C. § 2462. In the alternative, Lamb argues that the government has improperly calculated the penalty for the alleged violations of section 6701, and asks the court to rule that in the circumstances of this case the maximum penalty permitted is $8,000.00.

The government has conceded that, according to the court's recent decision in *Mattingly v. United States,* 924 F.2d 785 (8th Cir.1991), the maximum penalty that can be assessed under the facts of the instant case in this circuit is $8,000.00. However, the government denies that the five year statute of limitations contained in 28 U.S.C. § 2462 is applicable to the imposition of penalties under 26 U.S.C. § 6701.

Plaintiff Lamb resides in Tontitown, Arkansas, and has been engaged in public bookkeeping since 1967. As a part of her business Lamb has prepared income tax returns for numerous clients. In the fall of 1983, Lamb read an advertisement in a local newspaper for an investment seminar to be conducted in Little Rock, Arkansas. When Lamb contacted the seminar sponsor, she learned that the sponsor was planning to hold another seminar that fall in Fayetteville, Arkansas. In September of 1983 Lamb attended the Fayetteville seminar. A representative of O.E.C. Leasing Corporation, Ken Brown, presented information at the seminar concerning O.E.C.'s energy management system investments. Believing that the O.E.C. investment was a "good deal", Lamb leased an "energy minder" energy management system from O.E.C. in late 1983. Between September and the end of December, 1983, five of Lamb's tax clients also leased energy minders from O.E.C. Additionally, in November 1983 three other individuals were brought to Lamb's office by a salesman, John Weaver, for the purpose of having Lamb compute the investment tax credit carry back avail-

able to them if they too leased energy minder systems.

Between January and April, 1984, Lamb prepared tax returns for the eight aforementioned energy minder lessees. For each of those individuals Lamb also prepared an IRS form 1045 Application for Carryback of Tentative Refund. Those documents were prepared and delivered to the eight individuals prior to April 15, 1984.

Some time after April 23, 1984, Lamb received a "pre-filing notification letter" which notified her that the Internal Revenue Service considered the O.E.C. program an abusive tax shelter. In mid-January, 1985, Lamb's personal income tax returns were audited by the IRS, and as a result of the audit she paid additional penalties and interest in the sum of $7460.33.

On or about December 6, 1984, Lamb received a summons from the IRS notifying her that she was being investigated for her activities in regard to the O.E.C. leasing program.[1] Shortly after June 26, 1989, Lamb was notified by the IRS that it was imposing a penalty against her for promoting an abusive tax shelter pursuant to Section 6700 of the Internal Revenue Code. Some time in early June, 1989, Lamb was informed that the IRS had assessed a penalty against her in the amount of $26,000.00 as a result of her preparation of the IRS forms 1045 discussed above. As noted, the government has now reduced the penalty imposed against Lamb to $8000.00.

Lamb contends that she prepared the 1045 forms between January 1 and April 15, 1984. The penalty assessment was not made until July 3, 1989, more than five years after the preparation of the doc-

uments complained of by the IRS. Lamb argues that the government is precluded from assessing any penalties against her under 26 U.S.C. §§ 6700 and 6701 because the penalty was not assessed within the five year period specified by 28 U.S.C. § 2462. Section 2462 states:

> Except as otherwise provided by Act of Congress, an action, suit proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued....

Lamb's argument, in a nutshell, is that since the penalty statutes do not contain a statute of limitations this "default" statute imposes a five year limit.

The government argues that the penalty imposed by the IRS is an "assessment" and not a "fine" or "penalty." Since section 2462 does not specifically establish a default statute of limitations for administrative assessments, the argument goes, it cannot be applied to the imposition of penalties under sections 6700 and 6701.

The court finds the government's distinction between the IRS's act of "assessment" and the fines and penalties which are admittedly subject to 28 U.S.C. § 2462 artificial and unconvincing. Taken to its logical conclusion, the government's position would mean that while the IRS is free to *assess* penalties under sections 6700 and 6701 at any point in time it wishes, it cannot take any steps to *enforce* those penalties through judicial proceedings when the assessment itself was made outside the five year limitations period.[2] That

---

1. As a result of the IRS investigation of O.E.C., a suit was filed in the Chancery Court of Washington County, Arkansas, against John Weaver, Roberta Lamb, Ken Brown, and O.E.C. Leasing Corporation. The plaintiffs asserted that Lamb was negligent and that she breached her fiduciary duty to them in connection with her preparation of plaintiffs' 1983 tax returns. Lamb was exonerated by the court in that action, and the court stated in its decree that "defendant Robert Lamb did not solicit, sell, or offer to plaintiffs the investment contracts and plaintiffs' action as to said defendant should be dismissed." *Woodlee v. Weaver,* No. E 86–1028, decree at ¶ 10 (entered March 16, 1987).

2. The government acknowledges that 28 U.S.C. § 2462 "imposes a 5–year period within which the United States may institute *judicial proceedings* for the enforcement of civil fines, penalties, or forfeitures, where Congress has not otherwise provided a limitations period for the institution of such proceedings." United States Memorandum of Law in Support of Opposition to Plaintiff's Motion for Summary Judgment at 7. Ironically, the government's counterclaim in this action for the collection of the penalty imposed on plaintiff seeks to achieve a result that the government has implicitly acknowledged is impermissible.

would be a peculiar outcome, to say the least, and the court does not believe that Congress intended this result.

In the only reported case to address this issue, *Mullikin v. United States*, Stand. Fed.Tax Rep. (CCH) ¶ 50,414, 1990 WL 120657 (E.D.Ky. July 13, 1990), *appeal docketed*, No. 90–6456 (6th Cir. Nov. 13, 1990), the court held that the five year limitations period established by 28 U.S.C. § 2462 applied to penalties assessed under 26 U.S.C. § 6701. The court was persuaded by the plaintiff's argument that, unless Congress specifically provides otherwise, *some* statute of limitations should apply. The policy underlying this argument was articulated in *Rothensies v. Electric Storage Battery Co.*, 329 U.S. 296, 67 S.Ct. 271, 91 L.Ed. 296 (1946). In *Rothensies*, the Court stated:

> It probably would be all but intolerable, at least Congress has regarded it as ill-advised, to have an income tax system under which there never would come a day of final settlement and which required both the taxpayer and the Government to stand ready forever and a day to produce vouchers, prove events, establish values and recall details of all that goes into an income tax contest. Hence, a statute of limitation is an almost indispensable element of fairness as well as of practical administration of an income tax policy.
>
> We have had recent occasion to point out the reason and the character of such limitation statutes. "Statutes of limitation, like the equitable doctrine of laches, in their conclusive effects are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them."

*Id.* at 301, 67 S.Ct. at 273 (quoting *Order of Railroad Telegraphers v. Railway Express Agency*, 321 U.S. 342, 348–49, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944).

The *Mullikin* court also rejected the government's argument that, because section 6701 does not contain a limitations period, the government had an unlimited time in which to file its claim. The court noted that "when Congress wanted an unlimited statute of limitations to apply to the penalty for taxpayer fraud, in specifically provided one in Section 6501(c)." The implication is that since Congress knew how to create an "unlimited statute of limitations", and since Congress also created a default statute of limitations in 28 U.S.C. § 2462, it intended for the five year limitations period to apply to section 6701 actions.

The government also noted in *Mullikin*, as it has in this case, that a number of district courts have held that the three year limitations period contained in 26 U.S.C. § 6501 is not applicable to penalties assessed under section 6701. *See, e.g., Emanuel v. United States*, 705 F.Supp. 434 (N.D.Ill.1989); *Agbanc, Ltd. v. United States*, 707 F.Supp. 423 (D.Ariz.1988); *Kuchan v. United States*, 679 F.Supp. 764 (N.D.Ill.1988). That limitations period applies only to the assessment of taxes to be reported on a return, or taxes payable by stamp. In *Kuchan*, the court rejected the plaintiff's arguments for applying the three year limitations period to section 6701 penalties in large part because it found section 6701 "analogous to other sections [of the Internal Revenue Code] enacted to combat fraud which provide unlimited periods of limitation...." 679 F.Supp. at 768. While the *Mullikin* court acknowledged that the district courts which have ruled on the applicability of section 6501 to section 6701 penalties would probably also reject the application of 28 U.S.C. § 2462, it offered a compelling summary of the rationale for the five year limitations period:

> Speculation as to future decisions of sister courts aside, this Court is of the opinion that it is not *clear* that no limitations period is to apply. The defendant's argument for applying analogous code provisions is somewhat persuasive; however, the case at bar is not the type of

case to warrant the court's imposition of an unlimited period. Furthermore, the default statute of limitations set forth in 28 U.S.C.A. § 2462 cannot be ignored. Where Congress has failed to otherwise provide a limitations period, or has failed to specifically provide that an action may be brought at any time, Congress has expressed its intent in 28 U.S.C.A. § 2462.

*Mullikin,* Stand.Fed.Tax Rep. (CCH) ¶ 50,-414 at 85,307.

Two other arguments made by the government in this action merit comment. First, the government asserts here that the *Mullikin* decision "stands the law on its head" because the court impermissibly provided a statute of limitations where Congress had failed to do so. The court believes that argument is based on a faulty reading of *Mullikin.* The court was not endeavoring to provide a statute of limitations where Congress had not done so. On the contrary, the court is quite clear in stating that it applied 28 U.S.C. § 2462 because it believed that was the intent of Congress.

Second, the government argues that "[t]here is no logical reason ... why Congress would have wanted to give third parties who aid taxpayers in filing false returns the benefit of a statute of limitations while denying such a benefit to the taxpayers themselves." United States' Memorandum at 15. In contrast to the government, it is not at all difficult for the court to see a difference in the situation of the taxpayer, who presumably is in the best position to know if he or she is filing a tax return that contains false information, and the situation of the party who prepares the return, who would presumably rely on information provided by the taxpayer. It is not clear—indeed, it seems unlikely—that this rationale was actually ever contemplated by Congress, but from a policy standpoint the court can certainly see a reason to treat the taxpayer and the preparer differently.

Because the court believes that the "intent" of Congress, in so far as it is indirectly ascertainable through examination of the statutes at issue in this action, was to limit the government's time for assessment and collection of penalties imposed under 26 U.S.C. § 6701 to the five year period specified in 28 U.S.C. § 2462, plaintiff's motion for summary judgment is granted. The government is ordered to refund to plaintiff the sum of $4,140.00, which plaintiff paid as partial payment of the penalties assessed by the IRS. Plaintiff is also entitled to interest on that amount pursuant to 26 U.S.C. §§ 6621(a)(1) and 7426(g), which the court calculates to be 6.98%.[3] Plaintiff is entitled to interest from the date of the payment of the partial penalty until the date the refund is paid.

A separate order in accordance with the above will be entered concurrently.

---

**3.** As of November 22, 1991, the applicable federal interest rate was 4.98%. 26 U.S.C. § 6621(a)(1) provides that the overpayment rate made applicable to this action by 26 U.S.C. § 7426(g)(1) is two percentage points higher than the applicable rate.