## ORDER OF RAILROAD TELEGRAPHERS *v.* RAILWAY EXPRESS AGENCY, INC.

No. 343.   Argued November 10, 1943.—Decided February 28, 1944.

*Mr. William G. McRae,* with whom *Mr. Leo J. Hassenauer* was on the brief, for petitioner.

*Mr. Blair Foster,* with whom *Messrs. A. M. Hartuny* and *H. S. Marx* were on the brief, for respondent.

MR. JUSTICE JACKSON delivered the opinion of the Court.

This hoary litigation presents the question whether a carrier by contracts with individual employees made in 1930 could supersede or expand terms of an agreement collectively bargained between the employer and the union in 1917, in view of the provisions of the Railway Labor Act of 1926, which was applicable when the controversy arose.

Petitioner was a union designated to represent certain crafts and classes of employees of carriers by railroad. Employees here involved are agents at stations on the Seaboard Airline Railroad, who primarily are employees of the railway and secondarily of the railway express agency; they receive compensation from each employer. For some years they were represented by the union in bargaining collective agreements with predecessor express companies. The last was executed in 1917 and was assumed by this respondent March 1, 1929.

In 1930, the Express Company began to handle new business consisting mainly of carload shipments of perishables which formerly had been handled by the railroad company as freight. The Express Company thought the change in volume and character of its shipments warranted an adjustment of rates of pay applicable to certain of the agencies where the shipments originated. The Railway Labor Act of 1926, then in effect, provided that

carriers and representatives of employees should give at least thirty days' written notice of an intended change affecting rates of pay, rules, or working conditions, and should agree upon time and place of conference.[1] The collective agreement also provided that no change should be made in its terms "until after 30 days' notice in writing has been given." The Express Company gave no such notice to the union signatory to the 1917 collective agreement. Instead, it gave individual notices to the agents that their compensation for such shipments would be $5.00 per car, the notices on one division going out on March 25, and those on another, April 8, and all becoming effective April 10, 1930. The agents involved, after various objections and negotiations, individually accepted the rate, although there is controversy as to whether their acceptance was wholly voluntary. For purposes of decision, however, we assume voluntary assent and that but for provisions of the Railway Labor Act valid individual contracts resulted.

The local chairman of the union protested and insisted that collective bargaining must control the compensation of the agents. The Express Company declined to accede to the claims, and the union's claim that the agents must be compensated under the collective agreement remained unadjusted. Attempts to adjust were renewed by the general chairman, but no voluntary Board of Adjustment was agreed upon as provided under § 3 of the 1926 Act.[2]

---

[1] § 6, 44 Stat. 582. This provided: "Carriers and the representatives of the employees shall give at least thirty days' written notice of an intended change affecting rates of pay, rules, or working conditions, and the time and place for conference between the representatives of the parties interested in such intended changes shall be agreed upon within ten days after the receipt of said notice, and said time shall be within the thirty days provided in the notice. . . ." The 1934 Act contains a similar provision. § 6, 48 Stat. 1197, 45 U. S. C. § 156.

[2] 44 Stat. 578.

The statutory Board was created in 1934,[3] the Company refused to join the union in a petition, and the union on October 8, 1935, gave notice of its intention to refer the dispute to the Board. The Company challenged the Board's jurisdiction, a hearing was had, the bi-partisan board deadlocked, a referee was named, and in 1936 objections to jurisdiction were overruled and a hearing on the merits was directed. After the hearing the Board again deadlocked, again a referee was chosen, and on December 15, 1937, an award sustaining the claims that the agents were entitled to the compensation provided by the collectively bargained agreement was made, accompanied by a holding that the individual contracts were ineffective. The Company failed to comply with the award and in December 1939, after almost two years, the present action was commenced in the United States District Court. The district courts are given jurisdiction to enforce awards of the Board, its orders and findings being declared to be "prima facie evidence of the facts therein stated." Laws 1934, c. 691, § 3, First (p), 48 Stat. 1192. In June 1942 decision was rendered by which the district court enforced the Adjustment Board's award. The Circuit Court of Appeals reversed upon the ground that the collective agreement had been superseded validly by the individual contracts and upon the further ground that the claims under collective agreements were barred by the statute

---

[3] Act of 1934, § 3, 48 Stat. 1189. § 3, First (i) provides: "The disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, including cases pending and unadjusted on the date of approval of this Act, shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes."

of limitations.[4]   These questions are unsettled ones important to the administration of the current Railway Labor Act, and we granted certiorari.[5]

1. The Company contends that special voluntary individual contracts as to rates of pay, rules, and conditions of employment may validly be made, notwithstanding the existence of a collective agreement, and that the terms of the individual agreements supersede those of the collectively bargained one.   If this were true, statutes requiring collective bargaining would have little substance, for what was made collectively could be promptly unmade individually.   It is said, however, that in this case the agreements affect relatively few agents and that those are specially and uniquely situated.   This apparently is true, for the application of the collective agreement results in an award of some $40,000 to one agent over the period and less than $2,000 to all of the others, and most of the awards are for a few hundred dollars.

Collective bargaining was not defined by the statute which provided for it, but it generally has been considered to absorb and give statutory approval to the philosophy of bargaining as worked out in the labor movement in the United States.[6]   From the first the position of labor with reference to the wage structure of an industry has been much like that of the carriers about rate structures.[7]   It is insisted that exceptional situations often have an importance to the whole because they introduce competitions and discriminations that are upsetting to the entire structure.

---

[4] 137 F. 2d 46.

[5] 320 U. S. 727.

[6] Cf. H. J. Heinz Co. v. Labor Board, 311 U. S. 514, 523–26.

[7] See Lenhoff, The Present Status of Collective Contracts in the American Legal System, 39 Mich. L. Rev. 1109; Daugherty, Labor Problems in American Industry (1933) p. 415; Taylor, Labor Problems and Labor Law (1938) p. 85 et seq.; Golden and Ruttenberg, The Dynamics of Industrial Democracy (1942) pp. 23–26, 82 et seq.

Hence effective collective bargaining has been generally conceded to include the right of the representatives of the unit to be consulted and to bargain about the exceptional as well as the routine rates, rules, and working conditions. Collective bargains need not and do not always settle or embrace every exception. It may be agreed that particular situations are reserved for individual contracting, either completely or within prescribed limits. Had this proposed rate of pay been submitted to the collective bargaining process it might have been settled thereby or might have resulted in an agreement that the Company should be free to negotiate with the agents severally. But the Company did not observe the right of the representatives of the whole unit to be notified and dealt with concerning a matter which from an employee's point of view may not be exceptional or which may provide a leverage for taking away other advantages of the collective contract.

The decision in *J. I. Case Co.* v. *Labor Board, ante,* p. 332, considers more generally the relation of individual contracts to collective bargaining, and much that is said in that opinion is applicable here.

We hold that the failure of the carrier to proceed as provided by the Railway Labor Act of 1926, then applicable, left the collective agreement in force throughout the period and that the carrier's efforts to modify its terms through individual agreements are not effective. The award, therefore, was in accordance with the law.

2. The Circuit Court of Appeals held the claims barred by the state six-year statute of limitations applicable in the forum. It is true that the enforcement of the award results in entering judgment in 1942 on claims that began to accrue in 1930 and some of which ceased to accrue over six years before the suit in the District Court was commenced. It also is true that some of these have accrued in large amounts.

If the action brought in 1939 had been a common-law action to recover wages, like that in *Moore* v. *Illinois Central R. Co.*, 312 U. S. 630, a quite different question of limitations would be presented. The action as brought, however, was not a common-law action but one of statutory origin to enforce the award of an administrative tribunal. A special two-year limitation from the time of award was prescribed by the federal statute,[8] and this action was brought within that period. It is clear that as an action to enforce the award the suit was not barred, and it must therefore have been the opinion of the Circuit Court of Appeals that the statute barred the administrative tribunal from making an award on claims so old. There is no federal statute of limitations applicable to unadjusted claims which the Adjustment Board may consider. It is difficult to see how state statutes of limitations can restrict the power of the federal administrative tribunal to consider and adjust claims. Moreover, even if the six-year statute did apply to the claims under the collective contract, as we think it did not, proceedings on these claims were initiated before the Board well within that time.

If, therefore, these claims are barred, it must be because the time occupied in their litigation before the Adjustment Board operates to defeat them. A state statute of limitations can hardly destroy a claim because the period of actual contest over it in a federal tribunal extends beyond the limitation period.

Statutes of limitation, like the equitable doctrine of laches, in their conclusive effects are designed to promote justice by preventing surprises through the revival of

[8] Act of 1934, § 3, First (q), 48 Stat. 1192, 45 U. S. C. § 153, First (q): "All actions at law based upon the provisions of this section shall be begun within two years from the time the cause of action accrues under the award of the division of the Adjustment Board, and not after."

claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them. Here, while the litigation shows no evidence of reckless haste on the part of either party, it cannot be said that the claims were not timely pursued.

Regrettable as the long delay has been it has been caused by the exigencies of the contest, not by the neglect to proceed. We find no basis for applying a state statute of limitations to cut off the right of the Adjustment Board to consider the claims or to absolve the courts from the duty to enforce an award.

The judgment of the Circuit Court of Appeals is

*Reversed.*

MR. JUSTICE ROBERTS is of opinion that the judgment should be affirmed for the reasons given in the opinion of the Circuit Court of Appeals, 137 F. 2d 46.