### NATIONAL LABOR RELATIONS BOARD v. BLAIR QUARRIES, Inc. .

#### No. 5427.

Circuit Court of Appeals, Fourth Circuit.

Dec. 10, 1945.

John E. Lawyer, Atty., and A. Norman Somers, Asst. Gen. Counsel, National Labor Relations Board, both of Washington, D. C. (David A. Morse, Gen. Counsel, Malcolm F. Halliday, Associate Gen. Counsel, and Owsley Vose, Atty., National Labor Relations Board, all of Washington, D. C., on the brief), for petitioner.

Robert W. Hemphill and John M. Hemphill, both of Chester, S. C. (Paul Hemphill, of Chester, S. C., on the brief), for respondent.

Before SOPER and DOBIE, Circuit Judges, and BARKSDALE, District Judge.

SOPER, Circuit Judge.

The order of the National Labor Relations Board sought to be enforced herein requires Blair Quarries, Inc., hereinafter called "Blair", to cease and desist from unfair labor practices, to bargain collectively with the United Stone and Allied Products Workers of America upon request, and to post appropriate notices. Enforcement is resisted (1) because the unfair labor practices complained of were not committed by the respondent but by the South Carolina Granite Company, hereinafter called "Granite", which owns and formerly operated the Blair quarry at Blair, S. C., and (2) because the union did not have a majority of the employees of the business at the time of the hearing or the order of the Board.

Granite leased the quarry on a royalty basis to Blair for a term commencing February 1, 1944, and Blair thereupon assumed the operation without change of personnel or in manner of doing business. The proceeding before the Board was originally instituted against Granite alone, but after the execution of the lease amended charges were filed against both corporations and both participated in the hearing. The decision and order of the Board and the petition for the enforcement thereof were directed against both corporations, but subsequently the case against Granite was settled upon the payment of back pay to two employees that had been discriminatorily discharged by it, and the proceeding against it was dismissed.

It is not now disputed that prior to the execution of the lease Blair had no connection with the business and no knowledge of the previous labor disputes between Granite and its employees. Blair, however, retained all of the employees includ-

ing the superintendent and the foremen, and the former president of Granite became the secretary-treasurer of Blair; and, consequently, the subsequent actions of one of the foremen upon which the charges of unfair labor practice against Blair are based can be best understood by considering the transactions between Granite and its employees before the transfer of the business. It is obvious that the employees would be likely to interpret the subsequent actions of Blair as a continuation of former policies, since notwithstanding the execution of the lease the personnel of the management and supervisory employees was substantially the same. The change of ownership did not erase the memory of past transactions. See, N.L.R.B. v. Adel Clay Products Co., 8 Cir., 134 F.2d 342, 346; N.L.R.B. v. Colten, 6 Cir., 105 F.2d 179, 183; N.L.R.B. v. Baldwin Locomotive Works, 3 Cir., 128 F.2d 39, 43; Bethlehem Steel Co. v. N.L.R.B., 74 App.D.C. 52, 120 F.2d 641, 650-1.

The difficulties between Granite and the employees arose in June, 1943, when a substantial number of the employees joined the union and effected the organization of the local body by the choice of temporary officers including one Adams, who became a member of the Grievance Committee. One of the foremen in particular spoke disparagingly of the union to the men and strove to prevent them from joining it, and told them that two men, including Adams, would be discharged and threatened other employees with discharge if they joined the union. These efforts continued up to the time of an election on October 5, 1943, held under the order and control of the Board, at which the union won a majority of the votes. The two men mentioned by the foreman were actually discharged for union activities; but subsequently, in recognition of the impropriety of this action and in settlement of the case against it, Granite compensated the men for loss of pay.

■ In view of these actions the conduct of the same foreman, subsequent to the execution of the lease in February, 1944, takes on an added significance. He informed an employee that the president of Blair intended to fight the union, and that the employee and other members of the union were about to lose their jobs on account of union activities, and that if the union remained in the plant the quar-

ry would be closed. We think that these coercive statements would naturally be considered by the employees as a continuance of the illegal conduct in which Granite had previously been engaged and constituted sufficient support for the finding of the Board that unfair labor practices had been committed by Blair itself.

■ As a result of the election in October, 1943, the Board certified the union as the lawful bargaining representative of the employees. On February 12, 1944, Blair, without consultation with the union, applied to the National War Labor Board for permission to grant a wage increase to the employees; and in February and again in April, 1944, ignored requests of the union for bargaining conferences. These actions constituted violations of § 8(5) and (1) of the statute, 29 U.S.C.A. § 158(5, 1), and furnished adequate foundation for the finding of the Board that Blair had refused to bargain collectively. See Great Southern Trucking Co. v. N.L.R.B., 4 Cir., 127 F.2d 180, 186; Medo Photo Supply Corp. v. N.L.R.B., 321 U.S. 678, 684, 64 S.Ct. 830, 88 L.Ed. 1007; Order of Railroad Telegraphers v. Railway Express Agency, Inc., 321 U.S. 342, 347, 64 S.Ct. 582, 88 L.Ed. 788.

■ Blair does not deny its refusal to bargain but defends on the ground that the union did not represent a majority of the employees at the time of the hearing before the examiner in May, 1944, or at the time the Board issued its order on October 28, 1944. We find that this defense cannot be sustained either in fact or in law. In asserting that the union did not represent a majority at the time of the hearing Blair relies on testimony given by a witness at the hearing that the union then had only twenty-eight out of sixty employees; but an examination of the record shows that the witness included in the total six clerical and supervisory employees who were not eligible for membership. Furthermore, no showing was made by Blair that at the time of the refusal to bargain, only three and a half months after the certification, the union had lost its majority. It is the established rule that a certification must be deemed effective for a reasonable period after its issuance and it cannot be claimed that such a period had expired when the refusal of Blair to bargain took place. See, N.L.R.B. v. P. Lorillard Co., 314 U.S. 512, 62 S.Ct. 397, 86

L.Ed. 380; Franks Bros. Co. v. N.L.R.B., 321 U.S. 702, 703, 704, 64 S.Ct. 817, 88 L.Ed. 1020; N.L.R.B. v. Appalachian Elec. Power Co., 4 Cir., 140 F.2d 217, 221, 222.

For these reasons a motion of Blair to remand the case to the Board for the purpose of adducing additional evidence pursuant to § 10 (e) of the Act, 29 U.S.C.A. § 160(e), in order to show that the union did not have a majority of employees at the time of the hearing or subsequently, must be overruled, and enforcement of the order of the Board will be directed as the judgment of this court.

Enforced.