**Floyd FARRIS, Jr., Plaintiff,**

v.

**UNITED STATES of America, and American Overseas Marine Corporation, Defendants.**

No. 94–275–Civ–J–20.

United States District Court, M.D. Florida, Jacksonville Division.

July 15, 1994.

David Craig Calley, Milne & Milne, Roger W. Rizk, Roger W. Rizk, P.A., Jacksonville, FL, for plaintiff.

Ralph Lee, U.S. Attorney's Office, Jacksonville, FL, Peter G. Myer, U.S. Dept. of Justice, Washington, DC, for defendants.

### ORDER

SCHLESINGER, District Judge.

Before the Court are Defendant United States' Motion to Dismiss (Doc. No. 10, filed May 25, 1994), the Motion to Dismiss American Overseas Marine Corporation (Doc. No. 12, filed May 25, 1994), the Motion to Set Aside Notice of Default (Doc. No. 14, filed May 25, 1994), Plaintiff's Motion for Entry of Default Final Judgment (Doc. No. 15, filed May 31, 1994) against Defendant American Overseas Marine Corporation ("AMSEA"), and the Motion for Leave to File United States' Reply to Plaintiffs' Memorandum in Opposition to Motion to Dismiss (Doc. No. 20, filed June 30, 1994). Plaintiff's Memorandum of Law in Opposition to United States of America's Motion to Dismiss (Doc. No. 16) was filed June 10, 1994 and American Overseas Marine Corporation's Opposition to Plaintiff's Motion for Entry of Default Final Judgment (Doc. No. 19) was filed June 21, 1994. To date, Plaintiff has failed to respond to AMSEA's Motion to Dismiss (Doc. No. 12) and the United States' Motion to Set Aside Notice of Default (Doc. No. 14).

## I. UNITED STATES' MOTION TO DISMISS

Pursuant to Fed.R.Civ.P. 12(b)(1), 12(b)(6) and/or 56, the United States seeks dismissal of the above-styled action. The United States argues that the claim on which the Complaint is based is barred by the statute of limitations.

This action is founded on an injury which Plaintiff allegedly sustained aboard the SS AIDE on June 5, 1991. *See* Complaint at ¶ 6. At all material times, the United States owned the vessel known as the SS AIDE and AMSEA operated the SS AIDE as ship manager and agent for the United States.

On January 23, 1992, Plaintiff's counsel wrote to AMSEA regarding Plaintiff's June 5, 1991, injury. AMSEA, in a letter dated January 28, 1992, *see* Exhibit A to Memorandum in Support of Motion to Dismiss the United States (Doc. No. 11), informed Plaintiff that the vessel was owned by the Maritime Administration, U.S. Department of Transportation. Furthermore, AMSEA informed Plaintiff's counsel to submit the claim administratively according to 46 C.F.R. §§ 327.1—327.8.

On January 25, 1993, Plaintiff filed an action against AMSEA. *See Floyd Farris, Jr. v. American Overseas Marine Corp.,* Case No. 93–84–Civ–J–20 (*"Farris I "*). The United States was not a defendant in *Farris I*. In an attempt to serve AMSEA, Plaintiff served Wayne Billyer of American Marine Consultants, Inc. in New Jersey on January 29, 1993. Wayne Billyer, however, was not an agent of AMSEA and he was not authorized to accept service on behalf of AMSEA. Thus, AMSEA was never properly served in *Farris I*. On March 29, 1993, Plaintiff moved for entry of default since AMSEA never responded to the Complaint. The Clerk entered default on March 29, 1993. On August 2, 1993, Plaintiff filed a Motion for Entry of Default Final Judgment.

On September 3, 1993, the United States' Motion to Dismiss or, in the Alternative, for Summary Judgment in favor of American Overseas Marine Corporation was filed. It is interesting that the United States filed this Motion since the United States was not even a party in *Farris I*. On September 23, 1993,

this Court entered an Order dismissing *Farris I* without prejudice because Plaintiff failed to show sufficient cause why he failed to ascertain that the SS AIDE was a vessel owned and operated by the United States, and thus why Plaintiff failed to perfect service upon the proper Defendant within 120 days of the filing of the Complaint. Plaintiff took no further action in *Farris I*. Plaintiff never filed a motion for reconsideration asking that the Court, rather than dismissing the action, allow Plaintiff to amend the Complaint naming the United States as a party. Plaintiff also never appealed the dismissal.

The Complaint in the instant action, *Farris II,* was filed on March 23, 1994, approximately six months after *Farris I* was dismissed for failure to serve the United States.

This Court has jurisdiction under the Suits in Admiralty Act ("SAA"), 46 U.S.C.App. §§ 741–752. Under the SAA, a suit "may be brought only within two years after the cause of action" arose. 46 U.S.C.App. § 745. Thus, at first glance, it appears that the claims in *Farris II* against the United States are barred by the limitations period. The injury occurred on June 5, 1991. Yet, the instant action was not commenced until March 23, 1994, more than two years after the cause of action arose.

The Eleventh Circuit, however, has recognized that the two year limitation on suits under the SAA can be tolled in appropriate circumstances. *See Raziano v. United States,* 999 F.2d 1539, 1541 (11th Cir.1993) (citing *McCormick v. United States,* 680 F.2d 345, 351 (5th Cir.1982)). "Equitable tolling is allowed 'where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Raziano,* 999 F.2d at 1541 (quoting *Irwin v. Veterans Affairs,* 498 U.S. 89, 95–96, 111 S.Ct. 453, 457, 112 L.Ed.2d 435 (1990)).

■ The Court finds that Plaintiff's filing of his Complaint in *Farris I* did not toll the statute of limitations and that, consequently, the instant action was not brought within the statutory period. Allowing this suit to continue would undermine the very purpose of the SAA statute of limitations.

The Court's dismissal of *Farris I* without prejudice does not authorize the instant action which was brought outside the binding limitations period. *See Stein v. Reynolds Securities, Inc.,* 667 F.2d 33 (11th Cir.1982); *see also Justice v. U.S.,* 6 F.3d 1474, 1478–79 (11th Cir.1993) (*Stein* announces the general rule that the filing of a lawsuit which later is dismissed without prejudice does not automatically toll the statute of limitations).

■ Even though Plaintiff may disagree, statutes of limitations have an important purpose. Statutes of limitations protect defendants,

> promoting justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them. Moreover, the courts ought to be relieved of the burden of trying stale claims when a plaintiff has slept on his rights.

*Justice,* 6 F.3d at 1479 (quoting *Burnett v. New York Central R. Co.,* 380 U.S. 424, 428, 85 S.Ct. 1050, 1054, 13 L.Ed.2d 941 (1965) (quoting *Order of Railroad Telegraphers v. Railway Express Agency,* 321 U.S. 342, 348–49, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944)).

■ On the other hand, these concerns may be outweighed when the interests of justice require that a plaintiff's rights be vindicated. *See id.* 6 F.3d at 1479. Courts acting in their equitable capacity should toll statutes of limitations "only upon finding an inequitable event that prevented plaintiff's timely action." *Id.* (quoting David D. Doran, Comment, *Equitable Tolling of Statutory Benefit Time Limitations: A Congressional Intent Analysis,* 64 Wash.L.Rev. 681, 682 (1989)). The burden is on Plaintiff to show that equitable tolling is warranted. *See Ross v. Buckeye Cellulose Corp.,* 980 F.2d 648, 661

(11th Cir.1993). The Court finds that Plaintiff has failed to meet this burden.

"The interests of justice side with the defendant when the plaintiff does not file [suit] in a timely fashion despite knowing or being in a position reasonably to know that the limitations period is running, and, of course, when [the plaintiff] fails to act with due diligence." *Justice*, 6 F.3d at 1479 (citations omitted). Plaintiff was aware that the United States was the owner of the SS AIDE as of January 28, 1992, if not sooner. *See* AMSEA's letter to Plaintiff's counsel dated January 28, 1992. Thus, Plaintiff failed to act with due diligence by not filing suit against the United States within the limitations period. Rather, Plaintiff waited approximately two years and two months after being informed by AMSEA that the United States owned the vessel before filing the instant action against the United States.

■ "The Supreme Court has made clear that tolling is an extraordinary remedy which should be extended only sparingly." *Justice*, 6 F.3d at 1479 (citing *Irwin*, 498 U.S. at 96, 111 S.Ct. at 457). "Principles of equitable tolling ... do not extend to what is at best a garden variety claim of excusable neglect." *Id.* 6 F.3d at 1480. Typically, a plaintiff who files late due to his own negligence may not invoke equity to avoid the statute of limitations. *See id.* Plaintiff has failed to show that due diligence was exercised in prosecuting his claim against the United States. Thus, Plaintiff is not entitled to equitable relief.

Furthermore, there is no evidence of any misconduct on the part of the United States tricking Plaintiff into allowing the filing deadline to pass. On January 28, 1992, Plaintiff was informed by AMSEA that the vessel was owned by the United States. This was one year and five months before the limitations period expired.

■ Moreover, Plaintiff had alternate ways of preserving his cause of action against the United States short of invoking the doctrine of equitable tolling. "It is a long-standing maxim ... that relief in equity generally is inappropriate when the moving party has an adequate remedy at law." *Justice*, 6 F.3d at 1480 (citations omitted). Plaintiff could have filed a timely motion for reconsideration. In that motion, Plaintiff could have alerted the Court that because the statute of limitations had expired, the dismissal without prejudice would operate as a dismissal with prejudice. Plaintiff could have argued that the Court, rather than dismissing *Farris I*, should have given him time to file an Amended Complaint naming the United States as a defendant. Plaintiff could have also presented this argument in a timely motion for relief from judgment under Fed.R.Civ.P. 60(b). *See Justice* 6 F.3d at 1481. Finally, Plaintiff could have appealed the dismissal of *Farris I*. The law is clear that a plaintiff may appeal from an involuntary dismissal without prejudice. *See id.* "The right to appeal generally is regarded as [an] adequate legal remedy which forecloses equitable relief." *Id.*

Plaintiff was represented by legal counsel and could have determined that several channels were open to preserve his cause of action. To the extent that Plaintiff will suffer irreparable harm if equitable tolling does not apply in this case, that is the consequence of his own failure to pursue his remedies at law. Equity will not intervene in such circumstances. *See id.*

■ Even if the United States was aware within two years of the accident that Plaintiff was charging it with legal responsibility for the accident,[1] the Court finds that this action is still barred by the statute of limitations. The statute of limitations is designed to prevent the litigation of stale claims, regardless of Defendant's awareness that it is being sued. *See Justice*, 6 F.3d at 1482; *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 473, 95 S.Ct. 1716, 1726, 44 L.Ed.2d 295 (1975).

■ "Furthermore, courts may not ignore the statute of limitations simply because they opine that a given action is not stale or

---

**1.** The United States filed its Motion to Dismiss or, in the Alternative, for Summary Judgment in Favor of American Overseas Marine Corporation in *Farris I* on September 3, 1993. This, however, was approximately three months after the statute of limitations had run.

that a particular defendant's repose already had been broken." *Justice*, 6 F.3d at 1483. Statutes of limitations "must be strictly adhered to by the judiciary." *Id.* (quoting *Kavanagh v. Noble*, 332 U.S. 535, 539, 68 S.Ct. 235, 237, 92 L.Ed. 150 (1948)). "Because [Plaintiff] does not otherwise qualify for equitable tolling, allowing tolling simply because ... the government's repose [may have] been broken would be tantamount to holding that the statute need not strictly be applied." *Id.*

 The Court is sympathetic to the plight of Mr. Farris, Jr. Nevertheless,

> [p]rocedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of ... sympathy for particular litigants.... [I]n the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.

*Justice*, 6 F.3d at 1483 (quoting *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 151–52, 104 S.Ct. 1723, 1725–26, 80 L.Ed.2d 196 (1984)).

Plaintiff failed to act with due diligence in pursuing his claim against the United States. Plaintiff's failure to take timely action against the United States when he knew of its ownership of the vessel militates against finding that equitable tolling should apply. Plaintiff also failed to avail himself of adequate legal remedies to save his cause of action. Plaintiff has failed to show that an inequitable event prevented Plaintiffs timely action.

## II. AMSEA'S MOTION TO DISMISS

 AMSEA argues that this Court lacks personal jurisdiction over it. The Court agrees.

AMSEA is a Delaware corporation with its principal place of business in Massachusetts. AMSEA owns no real property in the State of Florida and has no office, affiliation, or financial account in the State of Florida. AMSEA is not registered with the Florida Secretary of State, is not authorized to transact business in Florida, and has no agent for service of process in Florida. All of AMSEA's directors and corporate officers live and work in either Massachusetts or Virginia. AMSEA's business is exclusively with agencies of the United States government and AMSEA does not advertise.

AMSEA operates five "maritime prepositioning ships" ("MPS vessels") for the Military Sealift Command. These vessels are permanently loaded with military vehicles, weapons, and other hardware and are kept in almost constant movement from one port of call to another at the command of the United States Military Sealift Command, so as to facilitate rapid deployment of mobile United States military forces anywhere in the world that the need may arise. Every two years each of the five MPS vessels unloads its military cargo at the Jacksonville, Florida Navy Base so that the cargo can be serviced and maintained by the military. The cargo is then reloaded at Jacksonville.

Furthermore, each of the five MPS ships participates in loading and unloading exercises at Panama City, Florida approximately once a year. The vessels operated by AMSEA have undergone underwater surveys at Ft. Lauderdale, Florida. On each occasion that one of the MPS vessels calls in Florida, Strachan Shipping Co. of Jacksonville, Florida acts as a husbanding agent to accomplish the operations required by the military. Other than Strachan Shipping Co., the agent hired solely to accomplish the military's purposes in the port visits of the MPS vessels, it is only during the port visits of the MPS vessels that AMSEA has any agents or employees in the State of Florida. Thus, AMSEA's contacts with Florida have been in connection with the activities of the MPS vessels, and at the direction of the United States military.

 Specific jurisdiction exists "when a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 411 n. 8, 104 S.Ct. 1868, 1870 n. 8, 80 L.Ed.2d 404 (1984). This kind of jurisdiction requires a causal connection between the defendant's activities in the fo-

rum state and the plaintiff's cause of action. The Court finds that there is no causal connection between Plaintiff's alleged injury and this forum.

■ Additionally, the Court finds that AMSEA did not engage in purposeful, continuous, and systematic contacts within the State of Florida which would justify the exercise of general jurisdiction over AMSEA. General jurisdiction, as distinguished from specific jurisdiction, does not require that Plaintiff's cause of action arise out of the nonresident Defendant's contacts with the forum state. *See Helicopteros,* 466 U.S. at 411–12, 104 S.Ct. at 1870–71. However, for general jurisdiction to exist, AMSEA must be found to have maintained "continuous and systematic general business contacts" with the forum, so that it can properly be considered to be "present" in the forum. *Id.* "There must be some act by which the defendant **purposefully avails** itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws." *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) (emphasis added).

AMSEA's only contacts with the State of Florida are its port calls at the direction of the Military Sealift Command. AMSEA's lack of control over where its vessels would make port militates against finding AMSEA was reasonably put on notice that it might be called upon to defend actions in Florida, especially actions that did not arise in the State. As the Supreme Court has stated, the "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." *Helicopteros,* 466 U.S. at 417, 104 S.Ct. at 1873. Thus, asserting general jurisdiction over AMSEA in the State of Florida would not comport with the requirements of due process. *See, e.g., American Overseas Marine Corporation v. Patterson,* 632 So.2d 1124, 1130 (Fla. DCA 1st Dist.1994) (AMSEA's contacts with Florida are not enough to assert general jurisdiction over AMSEA, especially "since the MPS vessels have called at Florida ports only at the direction of the United States military, not by choice of" AMSEA).

The Court cannot conclude that the sporadic and nonpurposeful utilization of certain Florida ports by AMSEA is sufficient to allow any plaintiff, in spite of where he or she is injured, to bring a cause of action against AMSEA in Florida. Such a concept does not comply with the requirements of due process.

Additionally, the Court questions whether Plaintiff has stated a cause of action against AMSEA since the SAA bars admiralty claims against agents of the United States operating public vessels. The SAA makes an action against the United States the Plaintiff's exclusive remedy. *See Justice v. United States,* 6 F.3d 1474, 1476 n. 4 (11th Cir.1993); 46 U.S.C.App. § 745.

Since this Court lacks personal jurisdiction over AMSEA, it is powerless to enter a default against AMSEA. Thus, the Entry of Default (Doc. No. 9) entered against AMSEA on May 16, 1994, shall be vacated.

Accordingly, it is **ORDERED AND ADJUDGED** that:

(1) Defendant United States of America's Motion to Dismiss (Doc. No. 10) is **GRANTED,**

(2) The Motion for Leave to File United States' Reply to Plaintiff's Memorandum in Opposition to Motion to Dismiss (Doc. No. 20) is **MOOT,**

(3) The above-styled action is hereby **DISMISSED WITH PREJUDICE** against the United States,

(4) The Motion to Dismiss American Overseas Marine Corporation (Doc. No. 12) is **GRANTED,**

(5) The above-styled action is hereby **DISMISSED WITHOUT PREJUDICE** against American Overseas Marine Corporation,

(6) The Motion to Set Aside Notice of Default (Doc. No. 14) is **GRANTED,**

(7) The Entry of Default (Doc. No. 9) entered against AMSEA on May 16, 1994, is hereby **VACATED,**

(8) The Motion for Entry of Default Final Judgment (Doc. No. 15) is **DENIED,** and

(9) The Clerk is directed to close the file.

**DONE AND ENTERED.**