**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

I.T.O. CORPORATION OF VIRGINIA,
Petitioner,

v.

CHARLES PETTUS,
Respondent,

No. 95-1675

and

DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR,
Intervenor.

On Petition for Review of an Order
of the Benefits Review Board.
(BRB 92-999)

Argued: November 2, 1995

Decided: January 16, 1996

Before ERVIN, Chief Judge, and HALL and WILKINSON,
Circuit Judges.

_____

Reversed and remanded by published opinion. Judge Wilkinson wrote
the opinion, in which Chief Judge Ervin and Judge Hall joined.

_____

**COUNSEL**

**ARGUED:** Gerard E. W. Voyer, TAYLOR & WALKER, Norfolk,
Virginia, for Petitioner. John Harlow Klein, RUTTER & MONTA-

GNA, Norfolk, Virginia, for Respondent. Michael Scott Hertzig, Office of the Solicitor, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Intervenor. **ON BRIEF:** Donna W. Kearney, TAYLOR & WALKER, Norfolk, Virginia, for Petitioner. Thomas S. Williamson, Jr., Solicitor of Labor, Carol A. De Deo, Associate Solicitor, Janet R. Dunlop, Counsel for Longshore, Office of the Solicitor, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Intervenor.

_____

## OPINION

WILKINSON, Circuit Judge:

I.T.O. Corporation of America ("I.T.O.") appeals a decision of the Benefits Review Board ("BRB") awarding $790.62 in temporary total disability benefits to claimant. The BRB held that a claimant's letter containing a bare and unsupported demand for benefits under the Longshore and Harbor Workers' Compensation Act ("LHWCA") tolled the one-year limitations period on the power of the Office of Workers' Compensation Programs ("OWCP") to modify an existing compensation order. 33 U.S.C. § 922. Because we do not believe that such a letter constitutes a valid request for modification of an existing compensation order, we reverse the decision of the BRB and remand with instructions to deny the compensation claim.

I.

While working as a longshoreman for I.T.O., Charles Pettus injured his knee twice, on September 22, 1987 and on February 1, 1988. After both injuries Pettus suffered a period of temporary total disability. The injuries also caused a permanent partial disability in Pettus' right knee. On June 1, 1988, Pettus filed claims for disability benefits under the LHWCA. 33 U.S.C. § 901 et seq.

Pettus and I.T.O. eventually resolved all differences regarding the two injuries. Pursuant to their agreement, the district director, OWCP, entered compensation orders on August 23, 1989. I.T.O. complied with these orders, making its last payment to Pettus on August 28, 1989.

2

About a week later, on September 6, Pettus' counsel sent letters to the OWCP referencing the previous two injury claims and stating, "Please be advised that I herewith make demand for any and all benefits that may be due the above claimant pursuant to the [LHWCA]." The OWCP filed these letters, but otherwise took no action with regard to Pettus' case. I.T.O. received no notice of these letters.

The next month, as a result of his injured knee, Pettus suffered an additional period of temporary total disability from October 3 to October 17, 1989. Shortly thereafter, on November 3, 1989, Pettus and I.T.O. reached an agreement regarding attorney's fees for Pettus' initial claims. During these discussions, Pettus' counsel appears to have made no mention of the additional period of disability that had occurred in October.

On December 13, 1989, Pettus' counsel sent another letter to the OWCP referencing Pettus' two previous claims. Like the September letters, the December letter contained only one sentence. The letter stated "[p]lease be advised that we herewith make claim for any and all benefits my client may be entitled to pursuant to the [LHWCA]," but it did not report Pettus' period of disability during October. Again, OWCP took no other action with regard to Pettus' case, and I.T.O. was not provided with notice of the letter.

Until November 14, 1990, Pettus' case appears to have been inactive. On that date, however, Pettus obtained a "not fit for duty" slip from a Dr. Morales covering the period of temporary total disability from October 3 through October 17, 1989. On January 10, 1991, Pettus' counsel sent this slip to the OWCP along with a letter requesting a conference to discuss Pettus' temporary total disability during the October 1989 period.

On January 24, 1991, the OWCP sent I.T.O. a notice of an informal conference to discuss this claim for temporary total disability. See 33 U.S.C. §§ 919(b)-(c). The February 6, 1991 conference, however, failed to resolve Pettus' claim. On October 8, 1991, a formal hearing was held before an ALJ pursuant to the LHWCA, 33 U.S.C. § 919(c), to address whether Pettus' "claim for temporary total disability benefits for the period from October 3 to October 17, 1989 is time-barred as per Section 22 of the [LHWCA, 33 U.S.C. § 922]." The ALJ held:

3

(1) that Pettus' letters of September and December 1989 did not qualify as valid requests for modification under § 922; and (2) that Pettus' January 1991 request was time-barred by § 922.

Pettus subsequently appealed the ALJ's decision to the BRB. The BRB reversed the ALJ and held that Pettus' December letter constituted a valid and timely request for modification under 33 U.S.C. § 922. The company now appeals the BRB's decision to this court.[1]

II.

We shall review at the outset the statutory procedure for modifying compensation orders under the LHWCA. Section 22 of the LHWCA, 33 U.S.C. § 922, governs attempts to modify an existing compensation order on the ground of a change in conditions or because of a mistake of fact:

> Upon his own initiative, or upon the application of any party in interest . . . on the ground of a change in conditions or because of a mistake in a determination of fact by the [district director],[2] the [district director] may, at any time prior to one year after the date of the last payment of compensation . . . review a compensation case . . . in accordance with the procedure prescribed in respect of claims in section 919 of this title, and in accordance with such section issue a new compensation order which may terminate, continue, reinstate, increase, or decrease such compensation, or award compensation.

_____

[1] Under I.T.O. v. Benefits Review Bd., 563 F.2d 646, 648 (4th Cir. 1977), the "Director, Office of Workers' Compensation Programs, Department of Labor, is not a proper respondent in a petition for review . . . although upon application and for good cause shown he may be permitted to intervene therein." Inasmuch as the Director "administers and enforces the LHWCA [and] this court defers to his interpretation unless it is unreasonable or contrary to Congressional intent," Zapata Haynie Corp. v. Barnard, 933 F.2d, 256, 258 (4th Cir. 1991), we find that the Director has shown good cause to intervene.

[2] Though the statute still refers to the district director by his or her prior title, deputy commissioner, the title of the person performing these duties has been changed to "district director."

4

33 U.S.C. § 922. As the Supreme Court has noted, section 922 places a strict one-year limit on the power of the district director to review an existing compensation order. See Intercounty Construction Corp. v. Walter, 422 U.S. 1, 10-11 (1975).

Under § 922, the review process begins either at the district director's own initiative or "upon the application of any party in interest." An application of a party in interest need not meet formal criteria. See Fireman's Fund Insurance Co. v. Bergeron, 493 F.2d 545, 547 (5th Cir. 1974). The application need only be sufficient to trigger review before the one-year limitations period expires. See Intercounty, 422 U.S. at 11 (§ 922 imposes a "one-year time limit [ ] on the power of the [district director] to modify existing orders"); O'Keefe v. Aerojet-General Shipyards, Inc., 404 U.S. 254, 255 (1971) (§ 922 "permits a reopening within one year"); Fleetwood v. Newport News Shipbuilding & Dry Dock Co., 776 F.2d 1225, 1232 (4th Cir. 1985) (under § 922, an "award may be modified at any time within one year after the last payment of compensation").

The application of a party in interest is only the first step of review, a process that continues "in accordance with the procedure prescribed in respect of claims in section 919." 33 U.S.C.§ 922. Section 919 prescribes that "[w]ithin ten days after such claim is filed[,] the [district director] . . . shall notify the employer and any other person . . . whom the [district director] considers an interested party, that a claim has been filed." 33 U.S.C. § 919(b). After notification, the district director "shall make or cause to be made such investigations as he considers necessary in respect of the claim, and upon application of any interested party shall order a hearing thereon." 33 U.S.C. 919(c).

III.

Pettus contends that his letters of September and December 1989 sufficed to trigger review under § 922:

> Please be advised that I herewith make demand for any and all benefits that may be due the above claimant pursuant to the [LHWCA]. [September 1989 letter]

5

> Please be advised that we herewith make claim for any and all benefits my client may be entitled to pursuant to the [LHWCA]. [December 1989 letter]

Neither letter, however, induced any action on the part of the district director. Indeed, it appears that the district director did not regard either letter as an application for review under § 922. Had the district director been able to discern such an intention on the part of Pettus, the district director would have notified I.T.O., the next step in the statutory review process. See 33 U.S.C. § 919(b). I.T.O. received no such notice. Nor did the district director proceed with any investigation, conference, or hearing. See 33 U.S.C. § 919(c). Pettus' letters simply remained on file, apparently without any concern on the part of Pettus' counsel that many months later he had not heard from either the district director or I.T.O. regarding Pettus' alleged petition for review. Given the sparseness of these letters, it is hardly surprising that the process of review never began.

The Director of OWCP argues that § 922 allows threadbare letters, such as those sent by Pettus in September and December of 1989, to initiate the review process without any subsequent action on the part of the district director. We find this argument unpersuasive. Section 922's requirement that review commence within one year is not automatically fulfilled by just any communication from the claimant. A request for modification constitutes the commencement of review only if it is sufficient to initiate the process required under § 922, a process whose next step must occur within ten days of claimant's request for modification. While a claimant's application for modification need not meet any particular form, there must be some basis for a reasonable person to conclude that a modification request has been made.

Here, Pettus' letters were too sparse to meet even this most lenient of standards. They made no reference to any change in claimant's condition, to a mistake of fact in the earlier order, to additional evidence concerning claimant's disability, to dissatisfaction with the earlier order, or to anything that would alert a reasonable person that the earlier compensation award might warrant modification. The letters thus failed to indicate any actual intention on the part of the claimant to seek compensation for a particular loss, a factor that is critical in

6

assessing their sufficiency. Indeed, in <u>Fireman's Fund</u>, 493 F.2d at 546, the case principally relied upon by Pettus, the claimant evinced just such an intention: "[T]he claimant is permanently totally disabled and will file for a review under § 22 of the Act." Pettus' own letter by contrast--"[p]lease be advised that we herewith make claim for any and all benefits my client may be entitled to pursuant to the [LHWCA]"--does not disclose the requisite intent on the part of the writer to seek compensation for any particular loss or injury.

Indeed, it was impossible for Pettus to state such an intention in his September letter; Pettus did not suffer the additional period of disability until October. Such anticipatory filings cannot be thought of as initiating review. Further, the fact that the September 1989 letter was sent without cause also taints its twin, the December 1989 letter, which likewise appears to have been nothing more than a protective "catch-all" filing. Pettus' counsel even failed to mention the October disability while resolving the matter of attorney's fees with I.T.O. and the district director in November of 1989. In these circumstances, the claimant was sleeping on his rights.

As a result, neither notice nor investigation occurred until after claimant's more specific letter of January 10, 1991:

> Enclosed with this letter please find photostatic copy of a "Not fit for duty" status slip covering the period 10/3/89 to 10/17/89. I would greatly appreciate it if you would please set this matter down for a conference on the issue of temporary total disability covering the above period.

Indeed, following this January letter, events moved forward: notice to I.T.O. on January 24, a conference on February 6, and a formal hearing before an ALJ on October 8, 1991.

Unfortunately, by 1991, the power granted to the district director by Congress to review Pettus' compensation order had expired. Accordingly, Pettus and the district director, by attempting to commence review in January of 1991, ran afoul of Congress' "one-year time limit imposed on the power of the [district director] to modify existing orders." <u>Intercounty</u>, 422 U.S. at 11. To allow inscrutable,

7

single-sentence letters like those of September and December 1989 to toll the limitations period would set Congress' enactment at naught.[3]

IV.

Statutes of limitation "represent a pervasive legislative judgment . . . that `the right to be free of stale claims in time comes to prevail over the right to prosecute them.'" United States v. Kubrick, 444 U.S. 111, 117 (1979), quoting Railroad Telegraphers v. Railway Express Agency, 321 U.S. 342, 349 (1944). In deference to that legislative judgment, we must reverse the decision of the Benefits Review Board and remand with directions to deny the compensation claim.

REVERSED AND REMANDED
_____

[3] For the same reasons that the December 1989 letter failed to constitute a valid request for modification, it also failed to qualify as a timely filing of a claim under 33 U.S.C. § 913(a).

8