[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————

No. 10-12383

————————

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 17, 2011
JOHN LEY
CLERK

D. C. Docket No. 8:08-cv-01599-JSM-EAJ

JOHN NIESEN, as Personal Representative
for the Estate of Michael Scott Niesen, deceased,
individually and as personal representative for the
Estate of Mary F. Riley,

                                        Plaintiff-Appellant,

versus

CITY OF CLEARWATER, a
municipal corporation,
MICHAEL EGGER,
MARK CAIRNS,
EDWARD GARNER,
JAMES GRAVELY,
CHARLES BUTLER,

                                        Defendants-Appellees.

————————

Appeal from the United States District Court
for the Middle District of Florida

————————

(May 17, 2011)

Before DUBINA, Chief Judge, HILL and EBEL,[*] Circuit Judges.

PER CURIAM:

Plaintiff-Appellant John Niesen, acting as the personal representative for the estate of his deceased brother, Michael Scott Niesen, brought this action in 2008 against Defendants-Appellees the City of Clearwater and a number of its police officers alleging that his brother's death following a vehicular accident in 1977 (thirty-one years before this suit was filed) was the result of a brutal beating by those officers. Niesen brought several claims under 42 U.S.C. § 1983, alleging that Clearwater and the police officers involved engaged in a conspiracy to cover up the true circumstances surrounding his brother's death. On May 6, 2010, the district court granted summary judgment in favor of the Appellees on the grounds that Niesen's cause of action was precluded by Florida's four-year statute of limitations. Niesen now appeals, claiming that due to the conspiracy his cause of action did not accrue until 2006, making his 2008 action timely.

**I.**

On July 13, 1977, John Niesen's brother, Michael Niesen, was stopped by Officer Ronald Mahony for speeding. Mahoney believed that the truck Niesen

---

[*]Honorable David M. Ebel, United States Circuit Judge for the Tenth Circuit, sitting by designation.

was driving was stolen.  Niesen then attempted to flee the scene at a high rate of speed.  Mahony dove into the bed of the pick-up truck and may have fired into the cab in an attempt to stop Niesen.  Niesen lost control of the truck,  which went off the side of the road and flipped over.  Both Mahony and Niesen were ejected from the vehicle.  Mahony was fatally injured; Niesen was taken to the hospital but never regained consciousness and died the next day.

The police and the city of Clearwater maintain that Niesen's fatal injuries were caused by the accident.  Statements made by some of the witnesses at the scene  support the official version of events.   According to John Niesen, however, the day after the accident, a group of teenagers told  him that they witnessed the police officers  at the scene violently assault his brother.  With this information, Niesen began what has been a thirty-year  effort to uncover the  facts about his brother's death.  But he did not file suit.

By his count, Niesen claims  to have discovered seventeen witnesses who saw Michael Niesen alert, conscious, and coherent at the scene.  He claims a number of those witnesses saw his brother beaten by the police until he was unconscious.   These witnesses are said to include paramedics who were involved in treating Niesen.

In 2002, John Niesen wrote a seven-page letter to then Senator Zell Miller of Georgia in which he claimed that police officers beat his brother until he was unconscious. This letter sets forth most of the facts now alleged in Neisen's complaint.

Despite his knowledge of these alleged facts, Neisen did not file a complaint at that time. In 2006, Niesen interviewed John Garner, a rookie police officer on his first night on the job when Michael Niesen was killed, who told John Niesen that he spoke to his brother at the scene of the accident. Michael Niesen told Garner that he thought he was OK and was in no discomfort, at which point Garner went to help Officer Mahony. While Garner did not witness any officers beating Niesen, he told John Niesen that the massive head wounds that led to Niesen's death were not present when he spoke to his brother. Garner also stated that police reports claiming Niesen was unconscious when the police arrived were "a total lie," and that he was shocked to learn that Niesen had died. Garner told Niesen that after the accident, the officers involved in responding to the accident were gathered in a room by their supervisors. On a chalkboard were a list of items to be included in each officer's report. Garner stated that the officers were to have their story straight, including that Niesen never regained

consciousness. With Garner's statement in hand, John Niesen finally filed his complaint in 2008, thirty-one years after the incident in question.

## II.

According to Niesen, he accumulated an abundance of evidence that his brother was beaten to death by the Clearwater police and that a conspiracy was concocted to cover up that fact. Of course, Niesen's evidence is contradicted, but it certainly creates a question of fact that, if the case had been timely-filed, a jury would have decided.

But it is clear that Niesen's cause of action has long been barred by the applicable statute of limitations. Our case law does not require that the plaintiff have a perfect case or even a good case before the statute of limitations begins to run on his cause of action. Rather, "Section 1983 actions do not accrue until the plaintiff knows or has reason to know that he has been injured. Nor will a Section 1983 action accrue until the plaintiff is aware or should have been aware who has inflicted the injury." *Mullinax v. McElhenney*, 817 F.2d 711, 716 (11th Cir. 1987). Niesen had that information as early as the day after the accident in 1977 and no later than 2002 and the statute of limitations had run at least two years prior to the filing of his lawsuit.

The statute of limitations doctrine is a harsh one, and by definition it bars suits that may be meritorious. But it serves an important function and is "designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." *Order of R.R. Telegraphers v. Ry. Express Agency, Inc.*, 321 U.S. 342, 348–49, 64 S. Ct. 582, 586 (1944). This case may well be a tragic one, but the time limit for a civil action passed long ago. Accordingly, we conclude summary judgment was properly granted as to all Appellees.

**AFFIRMED.**