BRISCOE, Circuit Judge,
dissenting.
This case presents an issue of first impression in this and every other circuit: Is the statute of limitations for unpermitted construction or modification in violation of 42 U.S.C. § 7475(a) tolled so long as the construction or modification continues? The majority • concludes, that because this claim “first accrued” on the first day of construction, tolling for a continued violation is prohibited. Because this holding ignores the nature of tolling doctrines, as well as the text and purpose of the Glean Air Act’s Prevention of Significant Deterioration (PSD) program and the Oklahoma State Implementation Plan (SIP), I respectfully dissent.
*677 The majority is correct that Sierra Club’s claim “first accrued” within the meaning of 28 U.S.C. § 2462 when OG & E first began modification of a boiler at its Muskogee power plant. But that conclusion should not end our inquiry. The majority conflates the accrual date with a complete bar on tolling doctrines which, if applied, extend the timeliness of a claim notwithstanding an expired statute of limitations. Here, application of the “continuing violation” tolling doctrine[1] is appropriate for three reasons. First, the.plain text of the Clean Air Act, supported by Oklahoma’s SIP, prohibits the “construction” or “modification” of regulated air emissions sources, not the “commencement” of those activities. Second, cases from other circuits, rejecting the argument that operation of an unpermitted source is not a continuing violation, draw a principled line between the end of construction and the subsequent operation of a source. Third, characterizing a violation of the PSD program as a one-time occurrence severely undermines the structure of the program Congress so carefully crafted; but tolling in this instance does not undermine the purposes of statutes of limitations.
I

The continuing violation doctrine

The continuing violation doctrine tolls the statute of limitations “for a claim that otherwise would be time-barred where the violation ... continues to occur within the limitations period.” Nat’l Parks & Conservation Ass’n, Inc. v. Tenn. Valley Auth., 502 F.3d 1316, 1322 (11th Cir.2007) (citing Havens Realty Corp. v. Coleman, 455 U.S. 363, 380, 102 S.Ct. 1114, 71 L.Ed,2d 214 (1982)).[2] Where a violation is “ongoing, rather than a single event” and is “extant” within the limitations period, enforcement of that violation is timely, even if the violation “first accrued” outside of the limitations period. Interamericas Invs., Ltd. v. Bd. of Governors of the Fed. Reserve Sys., 111 F.3d 376, 382 (5th Cir. 1997) (citing Toussie v. United States, 397 U.S. 112, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970); and Hanover Shoe, Inc. v. United Shoe Mach. Corp., 392 U.S. 481, 502 n. 15, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968)) (tolling 28 U.S.C. § 2462 for a continuing securities violation).

The Clean Air Act and Oklahoma SIP

Looking to the substantive statute for guidance on the nature of the PSD violation, the text of both the Clean Air Act and the EPA-approved Oklahoma SIP strongly support application of the continuing violation doctrine. The Clean Air, Act requires that “[n]o major emitting facility ... may be constructed [or modified] ... unless ... a permit has been issued.” 42 U.S.C. §§ .7475(a)(1), 7479(2)(c). (emphasis added). Additionally, the citizen- suit provision that *678 empowers Sierra Club’s cause of action authorizes suit “against any person who proposes to construct or constructs ” a facility without a permit. 42 U.S.C. § 7604(a)(3) (emphasis added). Similarly, the Oklahoma SIP requires that “[n]o person shall cause or allow the construction or modification of any source” without obtaining a PSD permit from the Oklahoma Department, of Environmental Quality. Oklahoma SIP Regulations §. 1.4.2(a)(1) (emphasis added). None of these prohibitions focuses on the copimencement of construction; they focus instead on construction or modification as a whole.
The majority is correct when it states: “It is the act of constructing itself that is unlawful,” and “[t]o ‘construct’ is an ongoing project.” Maj. Op. at 672.- While acknowledging that “constructing or modifying a facility is- best characterized as a single, ongoing act,” id., the majority ignores the statutory and regulatory language. Instead, the majority inserts narrowing terms which are not there, characterizing the’ violation as the act of commencing construction, rather than the whole act of construction. But 42 U.S.C. § 7475(a) indicates' that Congress considered and rejected limiting PSD violations .to the commencement of construction. In defining the jurisdiction of the PSD amendments, Congress stated that facilities “on which construction is commenced after” the date of enactment would be subject to the requirements. 42 U.S.C. § 7475(a). In contrast, Congress omitted any mention of “commencing” construction, in the text of the actual prohibition. Id. (“No major emitting facility ... may be constructed....”) (emphasis added). “[Wjhere Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that -Congress acts intentionally and purposely in the disparate inclusion or exclusion.” Russello v. United States, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983) (quoting United States v. Wong Kim Bo, 472 F.2d 720, 722 (5th Cir.1972)).[3] Rote reliance on “first” accrual does not alter the statute’s language or negate Congress’s intent,
The majority’s reliance on an EPA Regulation that references the “begin[ning of] actual" construction” does not overcome this statutory language. See Maj. Op. at 673 (quoting 40 C.F.R. § 51.166(a)(7)(iii)). By relying on this regulation over the plain language of the Clean Air Act and the Oklahoma SIP, the majority ventures into administrative law and co-federalism issues far beyond the scope of this case. More importantly, the majority relies on this regulation merely for the accepted premise that the PSD claim “first accrued” when OG & E began its unpermitted modification. The majority again mistakes the date of first accrual with a bar on tolling doctrines, which permit otherwise time-barred claims.
Were" we to toll 28 U.S.C. § 2462 for a continuing violation based on a textual reading of the underlying statute, we would not be the first to do so. See Inter-americas Invs., 111 F.3d at 381-83; see also Birkelbach v. S.E.C., 751 F.3d 472, 479 (7th Cir.2014). In Interamericas Invs., the Fifth Circuit applied the continuing violation doctrine to securities re *679 porting violations subject , to the § 2462 statute of limitations. 111 F.3d at 381-83. The court was persuaded that the continuing violatipn doctrine applied because of the underlying statute’s precise language defining the violation, the implementing agency’s interpretation, and the fact that the statute provided daily penalties. Id. The Fifth Circuit concluded, therefore, that applying a continuing violation theory was necessary to implement congressional intent. Id. at 382-83. This case, although arising under different subject matter, is no different analytically. The plain language of the Clean Air Act and the implementing Oklahoma SIP precisely prohibit construction and modification, not just the commencement of those activities. This language reveals congressional intent that the violation be considered á continuing one at least so long as the unpermitted construction or modification continues.

Distinguishing continuing “operating” violations

The district court’s and majority’s reliance on cases from other circuits which purportedly address the issue at hand is misplaced. No other circuit has considered the continuing violation doctrine in the context of PSD violations where construction was ongoing within the limitations period. The majority’s citations to United States v. Midwest Generation, LLC, 720 F.3d 644, 646-47 (7th Cir.2013), and United States v. EME Homer City Generation, L.P., 727 F.3d 274, 283-88 (3d Cir,2013) are useful, at most, for the persuasive value of their dicta. These cases considered whether a PSD violation continued so long as the emissions source, constructed or modified without a permit, was in operation. See also Sierra Club v. Otter Tail Power Co., 615 F.3d 1008, 1014-15 (8th Cir.2010); Nat’l Parks & Conservation Ass’n, 502 F.3d at 1322-25. In all of these cases, construction or modification was completed outside of. the five-year statute of limitations period. Thus, contrary to the majority’s indication, no circuit court, until today, has rejected the argument that the PSD violation continues as long as construction or modification continues.
The only views expressed by these sister circuits'on the issue presented are found in dicta in two cases, each pointing us‘in a different direction. In Otter Tail Power, the Eighth Circuit noted in its rejection of the continuing operations argument that “[i]t is ... clear that each of [the plaintiffs] PSD claims first accrued upon commencement of the relevant modification.” 615 F.3d at 1014 (emphasis added). The other reference is found in EME Homer, where the Third Circuit stated: “Like Rome, facilities are not built—or modified—in a day. It is possible that 'the maximum daily, fine accrues each day the owner or operator spends modifying or constructing the facility—from the beginning of construction to the end of construction.” EME Homer, 727 F.3d at 288. The Third Circuit also summarized the outcome of its holding as follows: “If the EPA does not object within five years of the completion of a facility’s modification, then it loses the right to seek civil penálties under the statute of limitations.” Id. at 289 (emphasis added). “[W]hen more than five years have passed since the end of construction ..., the Clean Air Act protects [the regulated party’s] reasonable investment expectations.” Id. (emphasis added).
I agree with the Third Circuit’s view. The EME Homer court drew a well-principled line, based on the best reading of the Clean Air Act. Where construction or modification is ongoing without, a permit, the violation continues and the statute of limitations is reasonably tolled. When construction is complete, so is-the violation;

*680
Clean Air Act policy and purpose

Finally, there are persuasive policy Reasons to conclude that the continuing violation doctrine tolls the statute of limitations here. The PSD program is the Clean Air Act’s principal tool to preserve areas that are in compliance with the National Ambient Air Quality Standards (NAAQSs). Failure to toll the statute of limitations to include the length of the construction process undermines the structure of this critical tool by upsetting the balance of the costs of noncompliance. If the law begins to characterize failure to get a PSD permit as a one-day violation, regulated parties will employ that authority to argue that they can only be subjected to one day of penalties (here, a maximum $32,500, or $37,500 for current violations). 42 U.S.C. § 7413; 40 C.F.R. § 19.4. Wasting no time, OG & E made that argument here as support for its statute of limitations theory. See Maj. Op. at 671. Thus, the majority’s ruling today may unknowingly place a low cap on available penalties on projects in violation of the PSD program, even where construction commences within five years of filing suit. Many of the emissions sources regulated by the PSD program generate a great deal of revenue, and enjoy lower costs in the absence of control measures which the permitting process would require.
Such a low cost of noncompliance undermines the balance Congress crafted when it designed the PSD program. This program allows state implementers like Oklahoma to allocate incremental increases in emissions among newly constructed and modified sources,- usually requiring control measures on the facility that the regulated entity would not otherwise install. This structure protects important interests-breathable, healthy air. See 1970 U.S.C.C.A.N. 5356, 5356. Without meaningful enforcement, emitters lose incentive to comply, and the program loses its principal tool to keep emissions at tolerable levels.
Unlike the integrity of the PSD program, policy concerns for the integrity of the statute of limitations are not implicated by this case. The principal purpose of a statute of limitations is to “promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.” Gabelli v. S.E.C., — U.S. —, 133 S.Ct. 1216, 1221, 185 L.Ed.2d 297 (2013) (quoting R.R. Telegraphers v. Ry. Express Agency, Inc., 321 U.S. 342, 348-49, 64 S.Ct. 582, 88 L.Ed. 788 (1944)). It is understandable that regulated parties would settle in their expectations and be entitled to repose after operating a completed facility for several years. See EME Homer, 727 F.3d at 289. But, while construction is ongoing, little is settled. Additionally, while construction is ongoing, loss of evidence is not a concern. Evidence continues to be created each day a project proceeds. The completion of modification or construction is therefore the appropriate place to end tolling, and begin expectations of repose.
II
In sum, I conclude that tolling the statute of limitations'-for a violation of 42 U.S.C. § 7475(a) is appropriate so long as the unpermitted construction or modification is ongoing. I would therefore not reach the issue of whether injunctive relief is barred under the concurrent remedies doctrine. Because the district court dismissed Sierra Club’s PSD claim as time-barred, I would reverse the judgment of the district court and remand for further proceedings.

. Contrary to the majority's conclusion, Sierra Club preserved its continuing violation argument. In its Response to OG & E’s Motion to Dismiss, Sierra Club made arguments identical to those niade on appeal regarding the text of the Clean Air Act, Oklahoma SIP, and case law. Sierra Club argued that the act of construction is an ongoing one, actionable as long as construction continues. App. at 74, 75, 77 n. 2, 78, Moreover, the cáses discussed in depth by both parties and the district court are the few authorities to speak to application of the continuing violation theory to PSD violations, so the issue was fairly raised. While Sierra Club failed to label their theory as a "continuing violation” theory before the district court, to call this argument forfeited ignores the substantive arguments for lack of a technical label.

. Sierra Club cites Havens merely as an example of the continuing violation theory generally. The majority’s attack on. Havens’s facts is therefore of little consequence to Sierra Club’s arguments specific to PSD violations.

. The title of 42’U.S.C. § 7475(a) is “Major emitting facilities on- which construction is commenced.” OG & E argued this title indicates that the violation is the commencement, rather than the whole act, of construction. Properly read, however, this title refers to the applicability of § 7475 to those facilities on which construction was commenced after the date of enactment, and further supports an inference that Congress intentionally declined to define PSD violations as the mere commencement of construction.